Fourth Division

December 31, 1998

No. 1-97-3758

THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE

) CIRCUIT COURT OF

Plaintiff-Appellee, ) COOK COUNTY.

)

v. )

)

OBIE WARLICK, ) HONORABLE

) THEMIS KARNEZIS,

Defendant-Appellant. ) JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

This garden variety burglary case raises an evidentiary issue that seems to be occurring with increasing frequency in the trials of criminal cases.

Obie Warlick (Warlick) was charged with burglary and possession of burglar tools.  After a jury trial, he was found guilty of burglary.  Because he had two prior burglary convictions, Warlick was sentenced as a Class X offender to 12 years imprisonment.  See 730 ILCS 5/5-5-3(c)(8) (West 1996).

Warlick raises several issues.  The only serious one is his claim he was unfairly prejudiced by the admission of a police call concerning a "burglary in progress."  While we find admission of the contents of the call was error, we also find the error was harmless.  For that reason, we affirm Warlick's conviction and sentence.

 
FACTS

   We set out those facts necessary to an understanding of the hearsay issue.

   Only two witnesses testified at trial.  The first witness was Horus Frantino, the manager of Chicago Recycling Resource Center located at 222 East 135th Place in Chicago.  Frantino described the recycling center as a warehouse where materials such as aluminum cans and glass bottles were processed and stored.  He said aluminum was compacted into bundles or "biskets" weighing 1500 pounds.  The facility also housed a welding shop, an office area, and, above the office, a residence.

Frantino testified Emiliano Lima and his son lived in the residence above the office.  They had keys to the facility and, with Frantino's permission, parked their car -- a Buick Skylark -

- inside the facility.  Lima, Frantino explained, was currently in Brazil.  Lima did not testify at trial.

Frantino said he received a call from the Chicago police department sometime after midnight on February 17, 1997.  In response to the call, Frantino went to the recycling center.  When he arrived he saw that a window was open in the rear of the building.  Frantino testified this window had been broken a few days earlier, but had been boarded up with cardboard.  When the facility closed at 4:30 p.m. on February 16, 1997, Frantino said, the window had been closed.

Inside the facility, Frantino saw Lima's parked car.  The doors of the car were open.  Frantino also saw a leather coat, which he knew to be Lima's, lying on the floor of the building near the open window.

Later Frantino went to the police station.  At the station, the police gave Frantino a bag of tools.  Though Frantino could not specifically identify the tools, he said he returned them to the recycling center, where they were being used.  The police also gave Frantino a briefcase, which was identified as belonging to Lima.

Finally, Frantino testified he did not know Warlick and did not give him permission to enter the facility on February 16, 1997.

The second witness was Chicago police officer Albert Susnis.  Officer Susnis testified he and his partner, Patrick Glinski, began working at 10 p.m. on February 16, 1997.  Shortly after, at about midnight, they received a dispatch concerning a "burglary in progress" at 222 East 135th Place.  Within two minutes they arrived at the Resource Center, where they were met by two men.  One man identified himself as Emiliano Lima, the other was Lima's son.

Officer Susnis said he and his partner were directed to the rear of the recycling center and shown an open window.  As they approached the open window, Officer Susnis observed a single set of footprints in the snow leading up to the open window.  There were no footprints leading away.  He also noted "some stuff" piled outside the window.  The piled objects had enabled someone to enter the window, which was six to eight feet from ground level.

Officer Susnis testified his partner climbed on the pile of stuff and entered the facility through the window.  At the same time, Lima let him into the facility through a side door.  When he entered the facility, Officer Susnis said, he heard his partner yell, "He's running toward the east."  Officer Susnis saw a man running and Officer Glinski in pursuit.  Officer Susnis joined the chase.  When cornered, the man, who was later identified as Warlick, hid under a truck.  Warlick refused to come out from beneath the truck despite their commands that he do so.  Officer Glinski then dragged Warlick from beneath the truck.  Once captured, Warlick was advised of his rights, placed in handcuffs, and transported to the police station in another squad car that arrived on the scene.

After Warlick was arrested, Officer Susnis investigated the premises.  He observed a parked car inside the facility with its doors open.  He said papers were strewn around on the floor, outside the car.  Inside the facility, underneath the open window, Officer Susnis found a briefcase.  Upon inspection, the briefcase contained personal papers belonging to Lima, as well as a Bible with Lima's name inside.  Just outside the open window, Officer Susnis found a canvas bag containing tools, a can of paint, and some other small items.  Officer Susnis testified he took the briefcase and bag of tools to the station to be inventoried.  Later, these two items were returned to Frantino.

Officer Susnis noted that, at the time of his arrest, Warlick's home address was just eight blocks away from the Resource Center, at 13306 S. Corliss.

The State entered photographs of the scene into evidence.  The photos, which depicted the facility, Lima's car, and the open window at the rear of the facility were identified by both witnesses.

Warlick did not testify, nor did he present any witnesses.

In closing argument, defense counsel conceded that Warlick had been inside the facility without permission, but suggested he had not entered with the intent to commit a theft, but because it was cold outside and he wanted to get somewhere where he could warm up.  The jury rejected this suggestion and returned a verdict of guilty of burglary.  

DECISION

     In a motion 
in limine
 and again during trial the defense objected to allowing the jury to hear the contents of the radio call that sent police officers to the recycling center.  The call contained two parts.  First, "burglary in progress."   Second, "an intruder on the premises."

Before trial, the trial judge ruled "intruder on the premises" would not be allowed, but "burglary in progress" would be.  At trial, then, Officer Susnis was asked:

        Q.  Drawing your attention to a few minutes before midnight, did you receive a call?

        A.  Yes, we did.

        Q.  Do you remember where you were when you received that call?

        A.  Approximately 125th and Michigan Avenue.

        Q.  What was the call that you received?

   DEFENSE COUNSEL:  Objection.

        THE COURT: He can answer.

        A.  A call for burglary in progress, 222 East 135th Place.

No limiting instruction was asked for or given.

The first question we must answer is whether "a call for burglary in progress" was inadmissible hearsay.  The State contends it was not hearsay because the radio call was not being offered for its truth, but to explain the police officer's investigative procedure.  The defense contends the call was inadmissible hearsay because it tended to prove a burglary in fact was taking place -- a matter in controversy at trial.

This issue keeps turning up in our cases.  While its resolution is not entirely clear, we do have guidance on where the line should be drawn.

A police officer may recount the steps taken in the investigation of a crime and may describe the events leading up to the defendant's arrest "where such testimony is necessary and important."  
People v. Simms
, 143 Ill. 2d 154, 174, 572 N.E.2d 947 (1991).  Even then, the evidence must satisfy some relevant nonhearsay purpose.  That is, the words of the communication must not be considered or used for their truth, only to show that the words were spoken when that somehow matters in the case.  In 
Simms
, for example, out-of-court words to the police were allowed to show why the officers continued to question the defendant.

At times, the contents of a radio call may be admitted where "necessary to fully explain the State's case to the trier of fact."  
People v. Williams
, 181 Ill. 2d 297, 313, 692 N.E.2d

1109 (1998) (911 tape admitted to show police officer acting in the course of his official duties).

Bystander statements -- "There she goes, right there, she's running" -- were approved in 
People v. Pulliam
, 176 Ill. 2d 261,  273, 680 N.E.2d 343 (1997), not for their truth, but to explain the steps taken by the police in investigating the crimes and arresting the defendant.  Out-of-court statements to police officers were allowed for similar non-truth reasons in 
In re E.H.
, 299 Ill. App 3d 42, 700 N.E.2d 1044 (1998) and 
People v. Wallace
, 299 Ill. App. 3d 9, 701 N.E.2d 87 (1998).

The line easiest to follow was drawn in 
People v. Gacho
, 122 Ill. 2d 221, 522 N.E.2d 1146 (1988).  The supreme court said it was permissible for a police officer to testify he had a conversation with the victim, then set out to find the defendant, even though the jury might infer the victim had named the defendant.  But, warned the court, had "the substance of the conversation *** been testified to, it would have been objectionable as hearsay." 
Gacho
, 122 Ill. 2d at 248.

It is clear, then, there is no hearsay problem when the officer merely testifies he spoke to someone or heard some unspecified words and then did something.  The jury is free to reach its own conclusions.

But invocation of phrases such as "investigative steps" or "police procedure" or "course of the investigation" should not be used as a substitute for principled analysis when the contents of a message, call, or other out-of-court statement is offered.  The claim that the words are not being offered for their truth does not foreclose further inquiry.

The trial judge first must determine whether the out-of-court words, offered for some purpose other than their truth, have any relevance to an issue in the case.  If they do, the judge then must weigh the relevance of the words for the declared nonhearsay purpose against the risk of unfair prejudice and possible misuse by the jury.  See 
People v. Cameron
, 189 Ill. App. 3d 998, 546 N.E.2d 259 (1989) (court should conduct a hearing out of jury's presence to determine both the scope of third-party out-of-court statements and the need for the jury to hear them).

Police procedure or not, when the words go to "the very essence of the dispute" (
People v. Jones
, 153 Ill. 2d 155, 160, 606 N.E.2d 1145 (1992)), the scale tips against admissibility. For example, in 
People v. Bruce
, 299 Ill. App. 3d 61, 67, 701 N.E.2d 63 (1998), out-of-court statements identifying certain jewelry in defendant's possession as belonging to the murder victim were admitted in error because they "went beyond what was necessary to explain police procedure."  Most recently, we held admission of the words of a search warrant was reversible error, rejecting a claim the evidence was necessary to explain

why the police arrested the defendant for illegal possession of cocaine.  
People v. Virgin
, No. 1-97-2885, filed December 21. 1998. 

The "police procedure" shibboleth has not proved persuasive  in other cases.  In 
People v. Cordero
, 244 Ill. App 3d 390, 392,  613 N.E.2d 391 (1993), a car theft case, admission of a police message that the car had been reported stolen was error because it "went to the very essence of the offense."  It was treated as hearsay because of the risk the jury would consider the words  for their truth.

A radio message reporting a robbery and describing the car wanted in connection with the robbery was inadmissible hearsay in 
People v. Wallace
, 210 Ill. App. 3d 325, 568 N.E.2d 1332 (1991). In 
People v. Johnson
, 202 Ill. App. 3d 417, 559 N.E.2d 1041 (1990), out-of-court descriptions and identifications of the defendant went beyond police investigative steps and into inadmissible hearsay.  Also see 
People v. Thomas
, 199 Ill. App. 3d 79, 556 N.E.2d 1246 (1990)(radio dispatch informing officer of an "intoxicated driver" inadmissible in a driving under the influence of alcohol case); 
People v. Laurry
, 5 Ill. App. 3d

713, 283 N.E.2d 895 (1972) ("robbery in progress" call should not have been admitted in an armed robbery trial); 
People v. Thompson
, 128 Ill. App. 2d 420, 263 N.E.2d 124 (1970)(error in a robbery trial to admit a boy's out-of-court statement that a man was being robbed in a nearby hallway); and 
People v. Hazen
, 104 Ill. App. 2d 398, 244 N.E.2d 424 (1969) (error in a theft case to admit account of radio message that tended to identify the defendant).

In the case before us we see no good reason why the jury had to know the police officer received a "burglary in progress"

call.  Mere curiosity does not establish relevance.  There was no issue concerning the officers' reason or motive for going to the recycling center.  It simply did not matter.  It would have been enough for the officer to testify he received a radio message, then went to the recycling center.

The contents of the call had slight or no relevance when offered for a nonhearsay purpose.  It did not help the jury decide the case.  On the other hand, a serious issue in the case was whether a burglary in fact was taking place.  The risk of the jury misusing the evidence was palpable.  A properly conducted balancing test would have weighed against admissibility.  For that reason, we find admission of the "burglary in progress" call was error.  Whether a prompt limiting instruction would have saved the error is something we need not decide, given our resolution of the next question -- whether the error was prejudicial.  But see 
People v. Williams
, 181 Ill. 2d at 313-14;  
People v. Cordero
, 244 Ill. App. 3d at 392.

Erroneous admission of hearsay will not be held reversible

if there is no reasonable probability the jury would have acquitted the defendant had the hearsay been excluded.  
People  v. West
, 234 Ill. App. 3d 578, 590, 598 N.E.2d 1356 (1992).  Here, on review of the record, we do not see how admission of the "burglary in progress" call could have significantly influenced the outcome of the trial. 

Warlick's lawyer conceded the defendant was inside the recycling center without authority.  He attempted to persuade the jury Warlick entered the center to escape the cold and snowy night.  The State contended there was sufficient evidence to prove he entered with the intent to commit theft.  The jury agreed with the State and we do not see how absence of the police call would have made any difference.  We note, too, the State made no attempt to exploit the radio call during its final argument, in that way avoiding a potentially fatal exacerbation of the error.

We conclude admission of the hearsay was harmless error.  We have considered the other issues raised by the defendant and find they do not merit further discussion.  That is,

(1) There was sufficient evidence to support the jury's verdict;

(2) Whether the evidence was sufficient to support a conviction of possession of burglar tools is a nonissue since he was not convicted of that offense;

(3) It was not error to deny a continuance to look into a newly added State's witness when that witness did not testify;

(4) Claims that the prosecutor made improper statements during final argument either were waived by a failure to make timely objection or are without merit; and

(5) The sentence of 12 years for a third burglary conviction was not excessive.

We affirm the defendant's conviction and sentence.

AFFIRMED.

SOUTH, P.J. and McNAMARA, J., concur.