NO. 4-05-0674          Filed: 12/12/06

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | Sangamon County |
| FREDERICK B. DAVIS, | ) | No. 03CF992 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Leslie J. Graves, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the opinion of the court:

In February 2004, a jury convicted defendant, Frederick B. Davis, of residential burglary (720 ILCS 5/19-3(a) (West 2002)) and robbery (720 ILCS 5/18-1 (West 2002)).  In May 2004, the trial court sentenced him to 14 years in prison on each conviction, with those sentences to be served concurrently.

In June 2004, defendant filed a motion to reconsider his sentence, which the trial court later denied.  In August 2004, defendant pro se filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 through 122-8 (West 2004)), alleging that (1) he received ineffective assistance of trial counsel when his counsel failed to move for statutory speedy-trial dismissal of the robbery charge and (2) counsel's error deprived him of a fair trial on the residential-burglary charge.

Following a May 2005 hearing, the trial court (1) granted defendant's postconviction petition, (2) vacated his robbery conviction, and (3) ordered a new sentencing hearing on

his residential-burglary conviction. Following a July 2005 hearing, the court resentenced defendant to 12 years in prison.

Defendant appeals, arguing that the trial court erred by not vacating his residential-burglary conviction and remanding for a new trial. We disagree and affirm.

I. BACKGROUND

A. Defendant's Trial

In October 2003, the State charged defendant with residential burglary (720 ILCS 5/19-3(a) (West 2002)), alleging that on September 8, 2003, he knowingly and without authority entered the home of Willard Shaffer with the intent to commit theft therein.

On January 27, 2004, the State charged defendant with robbery (720 ILCS 5/18-1 (West 2002)), alleging that on September 8, 2003, he knowingly took property (cash and prescription medications) from Shaffer by the use of force or threatening the imminent use of force.

At defendant's February 2004 jury trial, Springfield police officer Steve Dahlkamp testified that on the evening of September 8, 2003, he was dispatched to Shaffer's residence at 2909 East Elm in Springfield. Shaffer, who was 89 years old, told Dahlkamp that a man had just left in a cab with Shaffer's money and medications. Shaffer explained that he had heard a knock on the front door, which he had left unlocked because he was expecting his son. Shaffer opened the door, and a man (later identified as defendant) pushed Shaffer aside, entered the house,

- 2 -

and started looking through Shaffer's things. Defendant took (1) $60 from Shaffer's wallet (which had been on the kitchen table) and (2) prescription medications from a kitchen cabinet.

Dahlkamp's investigation led him to the cabdriver (Charles Burke) who picked up defendant at Shaffer's residence. Burke told Dahlkamp that when defendant got into the cab, he was carrying a bowl of chili and he spilled some of it inside the cab. He also told Dahlkamp that defendant got out of the cab near the Best Rest Motel and walked to a nearby residence. The cabdriver showed Dahlkamp the residence, which was located at 3236 East Enos in Springfield.

Dahlkamp went to 3236 East Enos and spoke with Kelly Busch, who lived there. Busch denied that any males were at the house that met defendant's description. However, Dahlkamp could see a man in the living room and asked Busch to have him step out. Defendant then came out to talk with Dahlkamp. He said that he had been at the house since 4 p.m. that day and had not gone out. Dahlkamp noticed what appeared to be a chili stain on defendant's pants.

Dahlkamp then had Burke come to Busch's residence and when he got there, Burke identified defendant as the man he had picked up at Shaffer's residence. Dahlkamp placed defendant under arrest. Busch then allowed Dahlkamp into the house and retrieved from her bedroom a plastic bag containing Shaffer's medications.

Springfield police evidence technician Neil Brown

testified that on September 8, 2003, he went to Shaffer's residence. He tested a chili can, telephone, and microwave for fingerprints. None of the fingerprints he obtained were of "comparison value."

Busch testified that on September 8, 2003, defendant arrived at her residence in the evening and about an hour later Dahlkamp arrived. Busch acknowledged that she used crack cocaine that day. She had been in her bedroom prior to defendant's arrival.

Busch admitted that she had lied to Dahlkamp when she told him that nobody had just arrived and when she initially told him that no prescription medications were in the house. She led him to the medications after he told her it was important for Shaffer to get them back. She knew they were in the bedroom because "any time anybody comes over, any of my friends, we would always go straight back to my room, straight back, no stops, just straight back."

Burke testified that on September 8, 2003, he was working as a cabdriver and was dispatched to 2909 East Elm. At that address, he picked up defendant, who emerged not from the house but from an area near a toolshed. Defendant was carrying some kind of power tool, a bowl of chili, and a "sack." During the cab ride, defendant spilled some of the chili.

Shaffer testified that around 6 p.m. on September 8, 2003, he was getting into the shower when there was a knock at the front door. Because he was expecting his son, he said, "come

in." Shaffer was "in the middle of the hall" when he saw defendant, who shoved him and said, "Pops, I'm not going to hurt you." Defendant went into the kitchen and opened a cabinet. He picked up a sack and went through the house. He kept Shaffer with him by pushing him around. Shaffer saw defendant pick up his wallet but did not see him take any money out. At some point, defendant stood in front of the cabinet where Shaffer kept his medications, but defendant was blocking Shaffer's view. Defendant asked Shaffer to heat up some chili for him, and Shaffer helped defendant operate the stove. Defendant started eating the chili before it was hot. Defendant called a taxicab.

While waiting for the taxicab, defendant became impatient and allowed Shaffer to get dressed so that he could drive defendant to an automated teller machine. When they went out to Shaffer's car, the cab arrived. When defendant went to the cab, he was carrying some kind of tool, the bowl of chili, and a plastic sack.

Shaffer did not scream or ask the cabdriver for help because he was confused and scared. He then went inside and called his son. About 20 minutes later, he called police and an officer came to speak with him. The police also later returned and took Shaffer to identify defendant.

On this evidence, the jury convicted defendant of residential burglary and robbery, and the trial court later sentenced him to 14 years in prison on each conviction, to be served concurrently.

On direct appeal from his convictions and sentences, this court affirmed the trial court's judgment. <u>People v. Davis</u>, No. 4-04-0819 (May 3, 2006) (unpublished order under Supreme Court Rule 23).

## B. Posttrial Proceedings

In August 2004, while defendant's June 2004 motion to reconsider was pending in the trial court, defendant <u>pro</u> <u>se</u> filed a postconviction petition. In his petition, defendant claimed that (1) he received ineffective assistance of trial counsel when his counsel failed to move for statutory speedy-trial dismissal of the robbery charge and (2) counsel's error deprived him of a fair trial on the residential-burglary charge.

Following a May 2005 hearing on defendant's postconviction petition, the trial court entered a written order (1) granting his petition, (2) vacating the robbery conviction, and (3) ordering a new sentencing hearing on defendant's residential-burglary conviction. In July 2005, the court later resentenced defendant to 12 years in prison for residential burglary. This appeal followed.

## II. DEFENDANT'S CLAIM THAT THE TRIAL COURT SHOULD HAVE VACATED HIS RESIDENTIAL-BURGLARY CONVICTION

Defendant argues that after the trial court determined that his trial counsel rendered ineffective assistance, the court should have vacated his residential-burglary conviction along with his robbery conviction. Specifically, he contends that the State's case against him was improperly strengthened by the State's late addition of the robbery charge, pointing out that,

but for his trial counsel's error, he would have faced only one charge.  Defendant concludes by asserting that he "should be placed in the same position he should have been in, but for his attorney's error.  Consequently, [his] conviction should be reversed, his sentences vacated, and a new trial ordered."  For the reasons that follow, we disagree.

A. Standard of Review

Before addressing the merits of defendant's argument, we first determine the appropriate standard of review.  Doing so requires us initially to determine the nature of the judgment we are reviewing.

In May 2005, the trial court conducted a hearing on defendant's postconviction petition and concluded that his trial counsel had provided ineffective assistance of counsel because of his failure to object to the late-filed robbery charge.  When the court indicated that it was prepared to vacate the robbery conviction, defendant cited <u>People v. Stanley</u>, 266 Ill. App. 3d 307, 641 N.E.2d 1224 (1994), and argued that the court should also vacate the residential-burglary conviction.  The court and counsel discussed the matter further, and the court ultimately decided to vacate only the robbery conviction and conduct a new sentencing hearing on the residential-burglary conviction.  The court stated that the new sentencing hearing would ensure that the court was "completely fair" in resentencing defendant.

One week after the hearing on the postconviction petition, the trial court entered the following written order:

"1. The Petition for Post-Conviction Relief is granted;

2. The conviction on COUNT II, Robbery, is hereby VACATED;

3. This cause shall be set for a new Sentencing Hearing July 18, 2005[,] at 11:00 a.m. on the conviction entered on COUNT I, RESIDENTIAL BURGLARY."

In People v. Johnson, 206 Ill. 2d 348, 357, 794 N.E.2d 294, 301 (2002), the supreme court discussed the various standards of review that apply to different stages of postconviction proceedings and explained its earlier decision on that subject in People v. Coleman, 183 Ill. 2d 366, 378-89, 701 N.E.2d 1063, 1070-75 (1998), as follows:

"The lengthy explanation of the standard of review in Coleman has since been reduced to a simple formula: de novo review for the dismissal of post[]conviction petition without an evidentiary hearing and review for manifest error when petitioner's constitutional claims were denied following an evidentiary hearing."

See also People v. Petty, 366 Ill. App. 3d 1170, 1175, 853 N.E.2d 429, 433 (2006) (in which this court held that "[t]rial court determinations on postconviction petitions made after an evidentiary hearing will not be disturbed unless manifestly errone-

- 8 -

ous").

However, neither <u>Coleman</u>, <u>Johnson</u>, nor <u>Petty</u> addressed precisely the situation in this case. Here, as the trial court's written order noted, defendant's postconviction petition was granted, and the only question defendant raises on appeal is whether the relief granted him by the trial court was appropriate. We conclude that in such a situation, the question as to the relief the trial court should award a defendant upon finding in his favor on a postconviction petition should lie in that court's sound discretion. Accordingly, this court will review the trial court's determination of that question and reverse only if we find an abuse of that court's discretion.

### B. The Prejudicial Effect of Defendant's Being Tried for Robbery as Well as Residential Burglary

Although defendant contends that but for his trial counsel's error, he would have faced only one charge (namely, residential burglary, instead of both residential burglary and robbery), he never explains how he was prejudiced by facing both charges. Nor does he claim that evidence was presented at his trial for robbery and residential burglary that would not have been presented had he been tried for residential burglary alone.

### 1. <u>Other-Crimes</u> <u>Evidence</u> <u>Admissible</u> <u>as</u> <u>Part</u> <u>of</u> <u>a</u> <u>Continuing</u> <u>Narrative</u>

The evidence at defendant's February 2004 jury trial focused exclusively on events occurring on the evening of September 8, 2003, at Shaffer's residence. A jury found that evidence sufficient to convict defendant of both residential burglary and

robbery, but even if defendant had not been charged with robbery, all of the evidence presented at defendant's February 2004 jury trial would still have been admissible as part of a continuing narrative of the events on that day.  In People v. Carter, 362 Ill. App. 3d 1180, 1189-90, 841 N.E.2d 1052, 1060 (2005), this court held that evidence of another crime is admissible if it is part of a continuing narrative of the event giving rise to the offense or, in other words, intertwined with the offense charged. In this case, that standard is clearly met.

In our judgment, the evidence against defendant would have been the same even if he had not been charged with robbery. Indeed, not only would the same evidence have been admissible, but as this court noted in defendant's earlier appeal, that evidence was "overwhelming."  Slip op. at 8.

2. The Applicability of This Court's Decision in People v. Trail

The remaining question before us is what, if any, prejudice does a defendant suffer when (1) he is appropriately on trial for one charge and the jury is improperly permitted to consider a second charge against him and (2) the evidence presented at his trial in support of both charges would be no different than the evidence presented at trial had he been tried only on the proper charge?  The answer to this question is found in this court's earlier decisions in cases in which a defendant claimed he was entitled to a severance of the charges against him even though the evidence to be presented at his trial would have been the same or essentially the same.

- 10 -

In *People v. Trail*, 197 Ill. App. 3d 742, 746, 555 N.E.2d 68, 71 (1990), the defendant was charged with two sexual assaults that occurred within the same household during closely related periods of time and involved similar victims, the defendant's teenage stepdaughters. After being convicted of two counts of criminal sexual assault committed upon his stepdaughters, the defendant appealed, in part, on the ground that the trial court erred by denying his motion to sever the charges. This court rejected that argument after first concluding that, "On the facts of this case, evidence pertaining to one sexual[-] assault count would have been admissible as 'other crimes' evidence for the other count." *Trail*, 197 Ill. App. 3d at 746, 555 N.E.2d at 71. We explained further, as follows:

> "We emphasize that where, as here, 'other crimes' evidence is properly admissible, the potential prejudice to a defendant of having the jury *decide* two separate charges is greatly diminished because the jury is going to be receiving evidence about both charges anyway." (Emphasis in original.) *Trail*, 197 Ill. App. 3d at 746, 555 N.E.2d at 71.

This court has since reaffirmed *Trail*'s holding. See, for example, *People v. Lewis*, 269 Ill. App. 3d 523, 529, 646 N.E.2d 305, 309 (1995). The Second District Appellate Court has similarly cited *Trail* approvingly in *People v. Willer*, 281 Ill. App.

- 11 -

3d 939, 953, 667 N.E.2d 708, 718 (1996).

Just as we concluded in Trail that any prejudice against a defendant for having his motion to sever denied is greatly diminished when the jury would be receiving evidence about both charges anyway, so we conclude that any prejudice to defendant from having the jury consider both the residential-burglary charge and the robbery charge against him was greatly diminished for the same reason. Accordingly, we further conclude that the trial court did not abuse its discretion by denying defendant's request to vacate his residential-burglary conviction and grant him a new trial thereon.

In reaching this conclusion, we reject defendant's claim that the decision of the Third District Appellate Court in Stanley requires otherwise.

## C. Defendant's Reliance Upon Stanley

In support of defendant's argument that the trial court erred by not vacating his residential-burglary conviction, defendant relies primarily upon the Third District Appellate Court's decision in Stanley. For the reasons that follow, we decline to follow it.

In Stanley, the State charged the defendant and his wife in May 1987 with aggravated criminal sexual assault, alleging that on May 13, 1986, the defendant and his wife committed an act of sexual penetration with J.W. in that the defendant placed his penis in contact with J.W.'s vagina while the defendant's wife held J.W.'s legs apart. On August 31, 1987, two weeks

before the defendant's jury trial, the State filed a five-count amended information that alleged he committed aggravated criminal sexual assault on or about May 13, 1986, by committing various other acts of sexual penetration upon J.W. One of the counts in the new information (count III) repeated the charge originally brought against the defendant, but the other four charges were new. Stanley, 266 Ill. App. 3d at 310, 641 N.E.2d at 1226-27.

Two weeks later, on September 14, 1987 (125 days after the defendant was taken into custody), a jury found the defendant guilty of all five counts of the amended information. Stanley, 266 Ill. App. 3d at 309, 641 N.E.2d at 1225. The trial court sentenced him to 25 years in prison on count I (no sentence was apparently imposed on any other count), and his conviction was affirmed on direct appeal.

The defendant later filed a postconviction petition, alleging, in part, that his trial counsel was ineffective for failing to move for a speedy-trial discharge of the four new charges. On appeal, he further argued that his appellate counsel was ineffective for failing to raise the issue on direct appeal. Stanley, 266 Ill. App. 3d at 309, 641 N.E.2d at 1226. Following an evidentiary hearing on these claims, the trial court denied the defendant's petition. On appeal, the Third District agreed with the defendant that his trial counsel's failure to move for a speedy-trial discharge of the new charges constituted ineffective assistance of counsel and ordered a new trial. Stanley, 266 Ill. App. 3d at 311, 641 N.E.2d at 1227. The Third District explained

its decision as follows:

"In this case, counsel's error resulted in forcing defendant to proceed to trial on four new charges with a mere two weeks to prepare. We can conceive of no rational trial strategy that would justify counsel's failure to move for a discharge with respect to those charges. We believe it reasonably probable that the outcome of a jury trial on multiple counts would be different from a trial on a single count, particularly given the nature of the acts alleged in this case. Accordingly, we find that counsel's error was sufficiently grave as to deprive defendant of his constitutional right to a fair trial. We further find that the speedy[-]trial issue was not waived by appellate counsel's failure to raise it on defendant's direct appeal. Counsel's oversight on appeal obviously prejudiced the defense and must be deemed ineffective assistance as well.

Having so found, we reject the State's suggestion to remand this cause solely for resentencing on count III. We agree that defendant's trial on that count was within the statutory time period, and it is not

- 14 -

clear from the record on appeal why the trial court chose to sentence defendant on count I. However, a new sentencing hearing is not an adequate form of relief. Defendant's trial on count III was unfairly tainted by counsel's deficient performance in failing to obtain a discharge of multiple new and additional charges brought late in the speedy[-]trial period. Accordingly, defendant is entitled to a new trial on count III." Stanley, 266 Ill. App. 3d at 311-12, 641 N.E.2d at 1227-28.

For purposes of this appeal, Stanley is of interest regarding the appellate court's treatment of count III, which is the same charge that was originally brought against the defendant. The Stanley court concluded that the defendant was entitled to a new trial on that charge, even though it was not subject to any speedy-trial problems, not just a remand for a new sentencing hearing.

Other than the conclusory language that the Third District believed "it reasonably probable that the outcome of a jury trial on multiple counts would be different from a trial on a single count, particularly given the nature of the acts alleged in this case" (Stanley, 266 Ill. App. 3d at 311, 641 N.E.2d at 1227), the Third District provided no discussion or analysis as to why this would be so. The only other discussion that appears

- 15 -

in the court's decision pertinent to this issue is as follows:
"[A] new sentencing hearing is not an adequate form of relief.
Defendant's trial on count III was unfairly tainted by counsel's
deficient performance in failing to obtain a discharge of multi-
ple new and additional charges brought late in the speedy[-]
trial period."  Stanley, 266 Ill. App. 3d at 312, 641 N.E.2d at
1227-28.  But again, the Third District failed to provide any
explanation or analysis as to why this should be so.

Defendant contends that Stanley stands for the blanket
proposition that when a defendant has been properly tried on some
counts along with other counts that were improper under speedy-
trial grounds, a new trial on the appropriate counts is required.
To the extent Stanley does stand for that proposition, we dis-
agree and decline to follow it.  Instead, we hold that the better
approach is to consider, as we did in this case, (1) how the
State's evidence against a defendant would have been different
had he been tried only on the appropriate charges and (2) what
prejudice he suffered, if any, from having the jury consider and
resolve a charge against him that should never have been before
it.

In so holding, we recognize that in Stanley the trial
court had denied the defendant's postconviction petition and the
Third District reversed that denial and remanded for a new trial
on the appropriate criminal charges.  Although the Third District
had the power to take that action, it could have instead simply
reversed the denial of the defendant's postconviction petition

- 16 -

and remanded to allow the trial court to determine the appropriate remedy.  Given that the trial court had presided over the defendant's trial and thus would have been familiar with the evidence presented on the various charges and its potential prejudicial impact, that court would have been in a better position to exercise the discretion necessary in determining whether a new trial was actually warranted.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.  As part of our judgment, we grant the State its statutory assessment of $50 against defendant as costs of this appeal.

Affirmed.

TURNER, P.J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I fully concur in the court's decision.  I agree that defendant's other-crimes-evidence argument must be rejected.  As the majority states, the evidence against defendant would have been the same even if he had not been charged with robbery.  Defendants are sometimes found guilty of some charges and not guilty of others.  Sometimes defendants are found guilty of lesser-included offenses.  The fact that the jury has heard additional evidence does not warrant reversal.

I am uncomfortable with broad reliance on the "continuing narrative exception."  Sometimes that exception has been used, for example, to allow police officers to testify to everything they came across during their investigations.  The exception should be applied cautiously.  "'The need for the evidence is slight, the likelihood of misuse great.'"  People v. Cameron, 189 Ill. App. 3d 998, 1004, 546 N.E.2d 259, 263 (1989), quoting E. Cleary, McCormick on Evidence §249, at 734 (3d ed. 1984); see also People v. Sample, 326 Ill. App. 3d 914, 921, 761 N.E.2d 1199, 1205 (2001); People v. Warlick, 302 Ill. App. 3d 595, 599-600. 707 N.E.2d 214, 218 (1998).