THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LEALTON CHEARS, Defendant-Appellee.

First District (1st Division) No. 1—06—3270

Opinion filed April 6, 2009.

Michael J. Pelletier and Jennifer L. Bontrager, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James E. Fitzgerald, Tasha-Marie Kelly, and Molly E. Donnelly, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GARCIA delivered the opinion of the court:

The defendant appeals from the second-stage dismissal of his petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 et seq. (West 2006)), following a second-degree-murder conviction. The defendant acknowledges that no better result than a second-degree-murder conviction was possible under the facts of his case. The postconviction petition challenges only the extended-term sentence he received. The defendant contends the trial court erred in dismissing his petition because he made a substantial showing of a constitutional violation where: (1) the trial court considered the wrong sentencing range; (2) trial counsel was ineffective for failing to correct the trial court's consideration of the wrong sentencing range and for failing to file a motion to reconsider the sentence imposed; (3) appellate counsel was ineffective for failing to raise the sentencing issue on direct appeal; (4) trial counsel was ineffective for failing to present the

testimony of two eyewitnesses regarding the manner in which the defendant committed the shooting; and (5) the State violated the defendant's due process rights by failing to disclose the complete criminal history of a key witness and failing to correct the witness's false testimony as to his criminal background, where this witness testified the defendant fired the final shot into the victim's head while the victim was on the ground. For the reasons that follow, we affirm.

## BACKGROUND

At trial, the evidence established that on June 7, 1997, the defendant shot Edmond Chambers four times, killing him. The defendant and Chambers were members of rival gangs and were engaged in an argument that night. The witnesses testified that as a group of people stood around, Chambers threw an empty liquor bottle at the defendant, before running away. The defendant followed, shooting him. The witnesses' testimony varied as to whether all the shots the defendant fired at Chambers were in rapid succession or whether there was a final shot fired after Chambers fell to the ground. Two of the State's witnesses, Darryl Ferguson and Eddie Riggs, testified that after Chambers fell to the ground, the defendant shot him for a final time. Riggs testified the defendant ran past Chambers as he fired his final shot. Ferguson testified the defendant stood over Chambers's fallen body and shot him a fourth time.

Dr. Thamrong Chira, a medical examiner, testified that Chambers's head wound was "consistent" with being on the ground at the time he was shot, but that was not the only possible explanation. Dr. Chira testified the head shot could have resulted from a person measuring 6 feet 1 inch or 6 feet 2 inches shooting a person about 5 feet 7 inches from behind if the person shot had a hyperextension of his head or face. He testified it is not uncommon for an individual to throw his head back while running. Three witnesses testified the defendant's height is 6 feet 1 inch. Robert Murphy, the defendant's grandfather, testified Chambers was 5 feet 6 inches.

The State's other witnesses, Lilly Jones, Michael Jones, and Keith Thomas, along with defense witnesses Edward Clark and Robert Murphy, all testified that the shots they heard were rapidly fired.

At the conclusion of the jury trial, the defendant was found guilty of the second-degree murder of Edmond Chambers. The trial court sentenced the defendant to an extended-term sentence of 30 years. 730 ILCS 5/5—8—2(a)(3) (West 1996). On February 9, 1998, the defendant's trial counsel filed a notice of appeal, but failed to prosecute the appeal, resulting in its dismissal. On December 7, 1999, the defendant filed a *pro se* motion to reinstate the appeal. This court denied the defendant's motion for want of jurisdiction.

On July 9, 2001, the defendant filed a *pro se* postconviction petition alleging, among other claims, ineffective assistance of counsel based on counsel's failure to pursue the direct appeal. On March 14, 2002, the trial court granted the defendant's postconviction petition.

> "Motion to file late notice of appeal is allowed. Petition for postconviction relief requesting that is allowed."

The defendant's direct appeal proceeded.

On appeal, the defendant argued: (1) his 30-year extended-term sentence violated *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000); (2) the trial court's imposition of an extended-term sentence was improper because the court failed to consider mitigating evidence; and (3) the trial court's imposition of an extended-term sentence based on its finding that the offense was carried out with exceptionally brutal and heinous conduct was not supported by the record.

On June 1, 2004, we affirmed the defendant's conviction and sentence. *People v. Chears*, No. 1—02—0998 (2004) (unpublished order under Supreme Court Rule 23). While we held the trial court violated *Apprendi* by sentencing the defendant to an extended term based on its own finding of exceptionally brutal and heinous conduct, we concluded the error was harmless because the defendant was not prejudiced by the absence of a jury's finding "as the record provide[d] overwhelming evidence that this crime was committed in a brutal and heinous manner." We also found the trial court considered the mitigating evidence when it imposed the extended-term sentence. The defendant's petition for leave to appeal to the Illinois Supreme Court was denied. *People v. Chears*, 212 Ill. 2d 538, 824 N.E.2d 286 (2004).

Thereafter, the defendant sought to reinstate the remaining, unadjudicated postconviction claims and to amend his petition to include additional claims that arose out of his direct appeal. During the hearing on the defendant's motion to reinstate his original postconviction petition, the court noted that the allegations contained in the defendant's original postconviction petition were addressed on direct appeal. Assistant public defender (APD) Harold Winston argued that certain witnesses did not testify at trial due to trial counsel's ineffectiveness. The court stated that even if those witnesses had testified, based on the evidence presented, the best result the defendant could have obtained was a second-degree-murder conviction, which is what he received. Defense counsel agreed that it was unlikely the witnesses' testimony would have changed the outcome of the trial, but argued their testimony was relevant to the extended-term sentence the defendant received. The court reminded counsel that the extended-term sentence was upheld on direct appeal. Defense counsel noted

that the propriety of the sentence was assessed without the benefit of the testimony of those same witnesses. Judge Sacks granted the defendant's motion, reinstated the postconviction petition, and allowed the defendant to file a supplemental petition.

On July 19, 2006, defense counsel filed the defendant's supplemental petition for postconviction relief, asserting four claims:

(1) the trial court relied on an incorrect sentencing range to impose an extended-term sentence, thus denying him due process;

(2) trial counsel was ineffective for failing to: investigate and call certain witnesses, investigate the criminal history of State witness Darryl Ferguson, correct the trial court's use of an incorrect extended-term sentencing range, and file a motion to reconsider the defendant's sentence;

(3) the State committed a *Brady* violation by failing to disclose Ferguson's full criminal history; and

(4) appellate counsel was ineffective because she failed to raise the incorrect sentencing range issue on direct appeal.

As support for his due process claim, the defendant attached a copy of the sentencing statute in effect at the time he was sentenced. When the defendant was sentenced, second-degree murder, a Class 1 felony, carried with it a sentencing range of 4 to 20 years. 730 ILCS 5/5—8—1(a)(1.5) (West 1996). Under the Unified Code of Corrections, an extended-term sentence may be imposed if "the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 ILCS 5/5—5—3.2(b)(2) (West 1996). The extended-term range for second-degree murder at that time was 15 to 30 years. 730 ILCS 5/5—8—2(a)(3) (West 1998). The defendant also attached the portion of the transcript from the sentencing hearing in which Judge Sacks incorrectly stated the extended-term sentencing range for second-degree murder was 20 to 40 years.

To support his claim of ineffective assistance of trial counsel based on counsel's failure to present the testimony of Robert Porter and Larry Young, the defendant attached affidavits from each. In their affidavits, Porter and Young claimed they witnessed the shooting and that the defendant did not fire the final shot while Chambers was on the ground. Porter and Young maintained they were never contacted by an investigator or defense counsel to testify on behalf of the defendant. The defendant also attached his own affidavit claiming he advised his trial counsel of the availability of these witnesses.

Supporting his claim that Darryl Ferguson testified falsely concerning his criminal history, the defendant attached copies of the circuit court clerk's records confirming Ferguson's criminal history, the portion of Ferguson's trial testimony in which he claimed to have

no adult criminal convictions, and an affidavit from Mary Clements, an investigator with the Cook County public defender's office, attesting that Ferguson admitted to her he had an adult conviction for aggravated robbery and two pending cases when he testified against the defendant.

As support for his claim that appellate counsel, Deborah Israel, was ineffective for her failure to raise the sentencing issue on direct appeal, the defendant attached her affidavit in which she avowed that she did not notice the trial court used an incorrect sentencing range to sentence the defendant when she reviewed the record, but if she had, she would have raised it.

The defendant requested the court reduce his extended-term sentence from 30 years to 22.5 years, arguing that because 30 fell at the midpoint of the incorrect sentencing range, the proper sentence would be the midpoint of the correct sentencing range. In the alternative, the defendant requested a new sentencing hearing or an evidentiary hearing on his claims of ineffective assistance of trial and appellate counsel and prosecutorial misconduct.

On September 27, 2006, the State moved to dismiss the defendant's supplemental postconviction petition, arguing the defendant's supplemental petition was an improper successive petition and that the allegations raised were waived because they were raised or could have been raised in the defendant's initial postconviction petition. Judge Sacks denied the State's motion, finding it would be unfair to the defendant to treat the supplemental petition as a successive petition because of the unusual procedural history of the case. The court's ruling on the defendant's original postconviction petition filed in 2001 only addressed a single claim, the wrongful denial of his constitutional right to a direct appeal. Because the court's ruling did not consider any other claims the defendant raised in the 2001 petition, fairness dictated reinstating his original petition and, upon reinstatement, allowing a supplemental petition to address claims that came to light after the resolution of his direct appeal.

As to the due process sentencing claim, the State argued that the defendant's sentence was within the statutory limits and where a sentence is within the statutory guidelines, the allegation of an excessive sentence is not cognizable under the Post-Conviction Hearing Act. The State further argued that appellate counsel's failure to raise the issue of the incorrect sentencing range on appeal did not meet the *Strickland* test for ineffective assistance because the defendant suffered no prejudice. Lastly, the State argued that even if Porter and Young had testified at trial consistent with their affidavits, there was no reasonable probability that an extended-term sentence would not have been imposed.

At the hearing on the State's motion to dismiss, APD Winston argued that although the defendant's sentence fell within the statutory guidelines, the trial court's consideration of an incorrect sentencing range was a due process violation, which mandated the sentence be vacated. Judge Sacks responded, "Assuming I was incorrect about that, I thought the sentence of 30 years was appropriate." Judge Sacks asked defense counsel what harm the defendant suffered by the imposition of a lawful sentence. APD Winston maintained that the defendant's due process rights were violated. Relying on our decision upholding the 30-year sentence, Judge Sacks questioned the defendant's due process claim but indicated he would examine the case law authority cited by defense counsel. APD Winston also argued that trial counsel was ineffective in failing to inform Judge Sacks of the correct sentencing range.

As to the *Brady* violation claim, APD Winston claimed that the State improperly allowed Ferguson to testify that he had no adult convictions. APD Winston argued that had Ferguson's adult conviction been brought out as the State was required to do, Ferguson would have been so impeached that his version of the shooting would have lost all credibility, thus making it unlikely that an extended-term sentence would have been imposed. Judge Sacks responded that learning of Ferguson's adult criminal history would not have changed his mind "in the slightest." Ferguson's juvenile adjudications were brought out at trial. The court reiterated: "[Ferguson's adult criminal history] would have made no difference to me one way or another."

To reinforce his challenge to Ferguson's version of the shooting, APD Winston argued that Porter and Young would also have contradicted Ferguson's version of the final shot and that trial counsel was ineffective for failing to call them. According to the defendant, the testimony of Porter and Young would likely have influenced Judge Sacks's sentencing decision.

On November 1, 2006, Judge Sacks granted the State's motion to dismiss the defendant's postconviction petition for failure to set out meritorious claims. In issuing his decision, Judge Sacks admitted that at the time of the defendant's sentencing he mistakenly believed the correct extended-term sentencing range to be 20 to 40 years.

> "However, what I want to be clear is my apprehension about the sentencing range had nothing to do whatsoever with my sentence of thirty years. It wasn't like I compromised and said the range is forty, therefore I'll give him thirty.
>
> I felt based on the totality of facts in this case that a sentence of thirty years was appropriate for the Defendant, Lealton Chears.
>
> The Appellate Court felt it was not inappropriate [on direct review]."

The trial court stated it read all of the cases cited by defense counsel, finding them inapplicable. Judge Sacks reiterated his position:

> "In my case there is no question in my mind that the fact that I thought the sentence range was twenty to forty had no bearing on my decision one way or the other concerning Lealton Chears. The defendant was convicted of murder in the second degree.
>
> The evidence established that he shot the man four times. Any one of the four would have killed the man. And one of which was basically in the top of the man's head.
>
> The court found the evidence showed brutal and heinous behavior. The Appellate Court said they did not disagree with that. They affirmed the sentence.

\* \* \*

> The defense says we have witnesses who might say the guy wasn't shot when he was on the ground. I heard the evidence at trial. I based my sentence on what I heard at the time. And honestly, I can't say that would change my opinion about the case one way or the other."

APD Winston indicated the defendant wished to appeal. The State appellate defender was appointed and the defendant's appeal proceeded.

## ANALYSIS

At the sentencing hearing, the State asked the court to impose a sentence of 40 years, based on what it believed was the extended-term range for second-degree murder of 20 to 40 years. Defense counsel did not challenge the sentencing range of 20 to 40 years for an extended sentence but argued that no extended sentence should be imposed because the defendant acted in self-defense. In issuing his ruling, Judge Sacks twice stated that the extended-term range for second-degree murder was 20 to 40 years. The court imposed a sentence of 30 years.

Based on Judge Sacks incorrectly identifying the applicable sentencing range, the defendant claims he was denied due process. The correct extended-term sentencing range for second-degree murder at the time was 15 to 30 years. 730 ILCS 5/5—8—2(a)(3) (West 1998). The defendant asks that we vacate his sentence and remand the cause for a new sentencing hearing before a different judge.

The State first argues the defendant forfeited this claim by not raising it on direct appeal.[1] However, even if we reach the merits of this claim, the State maintains no relief is warranted. The State

---

[1]After this appeal was marked "ready," the State sought leave to file a supplemental brief, raising for the first time its claim that Judge Sacks erred in treating the instant petition as a reinstatement of the defendant's 2001

contends the defendant's sentencing hearing was fair because Judge Sacks made clear he imposed a 30-year sentence based on the facts of the case. The 30-year sentence was not imposed because it fell midpoint between the incorrectly identified sentencing range of 20 to 40 years, as the defendant seems to imply. Ultimately, the State asserts that because the sentence imposed is within the correct sentencing range of 15 to 30 years, the sentence is valid and cannot be challenged as a constitutional violation.

The incorrectly identified sentencing range of 20 to 40 years forms the basis of the defendant's due process claim and two of his claims of deficient assistance, at the sentencing hearing by trial counsel and on direct appeal by appellate counsel. Setting aside the State's claim of forfeiture, we address the merits of the defendant's petition.

## Due Process Claim

■ In his main brief, the defendant argues, "[T]he incorrect sentencing range alone constitutes a due process violation and requires vacatur of the sentence imposed and remand for a new sentencing hearing, even if that sentence is within the correct range." As support the defendant quotes from *People v. Owens*, 377 Ill. App. 3d 302, 305-06, 878 N.E.2d 1189 (2007), quoting *People v. Brooks*, 202 Ill. App. 3d 164, 172, 559 N.E.2d 859 (1990): " '[E]ven if a sentence imposed under a wrong sentencing range fits within a correct sentencing range, the sentence must be vacated due to the trial court's reliance on the wrong sentencing range in imposing the sentence.' "

A second-stage dismissal of the defendant's petition presents a legal question we review *de novo. People v. Whitfield*, 217 Ill. 2d 177, 182, 840 N.E.2d 658 (2005). The relevant question raised during a second-stage postconviction proceeding is whether the allegations in the petition, supported by the trial record and accompanying affidavits, demonstrate a substantial showing of a constitutional deprivation, which mandates an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063 (1998). All well-pleaded facts in the petition and affidavits are taken as true, but assertions that amount to conclusions add nothing to the required showing to trigger an evidentiary hearing under the Act. *Coleman*, 183 Ill. 2d at 381. The facts here are not in dispute: Judge Sacks twice incorrectly identified the sentencing range as 20 to 40 years in imposing a lawful sentence of 30 years. 730 ILCS 5/5—8—2(a)(3) (West 1998) (at the time, extended-term sentenc-

---

petition. We granted the State leave to file the supplemental brief; however, we are unpersuaded that Judge Sacks erred. See *People v. Flores*, 153 Ill. 2d 264, 273-74, 606 N.E.2d 1078 (1992) (deficient initial proceedings may warrant a successive petition).

ing range for second-degree murder was 15 to 30 years). The question before us is whether the irrefutable recitation by the trial court of the wrong sentencing range constitutes a substantial showing of a constitutional violation to warrant a third-stage proceeding under the Post-Conviction Hearing Act.

The two cases on which the defendant relies to support his assertion that "Illinois law is clear," that an incorrectly identified sentencing range makes even a lawful sentence constitutionally infirm, do not stand for the proposition he makes before us. Neither *Owens* nor *Brooks* addresses a claim under the Post-Conviction Hearing Act. Neither discusses a sentencing claim as a constitutional due process violation.

In *Brooks*, on direct appeal, we found the trial court improperly sentenced the defendant as a Class X offender to 10 years in prison where the State failed to prove the defendant's prior offenses were committed in the sequence required under the relevant sentencing statute to trigger a Class X sentence. The State argued that vacatur of the defendant's sentence was unnecessary because an extended-term sentence of 10 years was warranted based on the aggravating factors presented at the sentencing hearing. We rejected the State's argument, vacated the defendant's sentence and remanded for a new sentencing hearing to allow the trial court, in the first instance, to determine the appropriate sentence. *Brooks*, 202 Ill. App. 3d at 171-73.

In *Owens*, on direct appeal, we questioned the imposition of a Class X sentence based on a Class 2 conviction. "[I]t is clear from the record before us that the trial court either relied on an insufficient number of Class 2 or greater felony convictions, or relied on an impermissible double enhancement to find defendant eligible for Class X sentencing." *Owens*, 377 Ill. App. 3d at 305.

In both *Brooks* and *Owens*, the validity of the actual sentence imposed was called into question. In *Brooks*, we questioned whether the defendant was properly found eligible for a Class X sentence. The State's claim that the sentence was nonetheless proper because it fell within the extended-term range was promptly dismissed for the obvious reason that the sentencing judge never considered whether an extended-term sentence was appropriate. In *Owens*, we questioned whether the defendant was properly sentenced where he was charged with a Class 4 felony, elevated to a Class 2 charge based on prior convictions, but given a Class X sentence. We acknowledged that the sentence actually imposed fell within the Class 2 sentencing range, but in light of the trial court's imposition of a Class X sentence we remanded for a new sentencing hearing. *Owens*, 377 Ill. App. 3d at

305-06. In neither case was the sentencing error characterized as a constitutional due process violation. In each case, the classification of the sentence actually imposed was inadequately supported by the record. *Brooks* and *Owens* are distinguishable from the facts of this case.

As to the constitutional claim the defendant raises before us, he has cited no authority, and our research has uncovered none, where a sentence that falls within the correct sentencing range is transformed into a constitutionally infirm sentence based solely on the sentencing range being wrongly recited. The burden is on the defendant to make a substantial showing of a constitutional violation at this second-stage proceeding.

There is nothing in the record to suggest Judge Sacks was in any way influenced by the incorrectly identified sentencing range.[2] Nor has the defendant made a showing that Judge Sacks *relied* on the incorrectly identified sentencing range in imposing a sentence of 30 years. In fact, Judge Sacks made clear the sentencing range did not influence the sentence he actually imposed. "It wasn't like I compromised and said the range is forty, therefore I'll give him thirty. I felt based on the totality of facts in this case that a sentence of thirty years was appropriate for the Defendant Lealton Chears."[3] See *People v. Stewart*, 141 Ill. 2d 107, 120, 565 N.E.2d 968 (1990) (the possibility of a different result is insufficient, the defendant must show a "reasonable *probability* *** of a different decision" (emphasis in original)). Judge Sacks made his thought processes clear: he imposed a sentence of 30 years because the evidence adduced at trial warranted the imposition of such a sentence. The lawful sentence was the result of Judge Sacks's determination that the defendant's criminal acts were exceptionally brutal and heinous, a finding with which we agreed on direct appeal.

To be clear, the defendant has made no showing that the trial court *relied* on the incorrect sentencing range in imposing a sentence of 30 years; nor has the defendant made a showing that a lesser sentence would have been imposed had the correct sentencing range

---

[2] It was the State that first incorrectly identified the sentencing range at the mitigation and aggravation hearing. That the State's error went unchallenged by Judge Sacks, defense counsel, or appellate counsel on direct appeal seems reasonable given that it is counterintuitive that the sentencing range for exceptionally brutal and heinous conduct for second-degree murder would begin at less than the maximum of 20 years for the Class 1 felony.

[3] The defendant does not repeat before this court his suggestion below that because the actual sentence imposed fell midpoint between 20 and 40, a sentence midpoint between 15 and 30 or 22.5 years would be appropriate.

been made known to the trial court. We find no constitutional violation where the trial court did not impose a sentence greater than that authorized by statute. See *People v. Jackson*, 199 Ill. 2d 286, 302, 769 N.E.2d 21 (2002) (plea of guilty waives *Apprendi* challenge to extended-term sentence where "the sentence was not beyond that which the court was authorized by statute to impose"). That no substantial showing of a constitutional violation can be made under the facts of this case is reinforced by the clear message of the trial court that remand for a third-stage proceeding would be pointless as the sentence imposed was warranted by the facts of the case, a result we would not expect to change.[4]

## Ineffective Assistance of Counsel

■ The defendant makes essentially the same due process claim as his challenge to the effectiveness of his trial counsel and appellate counsel. He attacks his trial counsel for failing to correct Judge Sacks's misapprehension of the extended-term sentencing range and appellate counsel for failing to raise the sentencing issue on direct appeal. As an added measure, the defendant throws in that trial counsel was also ineffective for failing to file a motion to reconsider the sentence, a procedural omission which ordinarily bars a sentencing issue from being raised on appeal but which did not preclude us from addressing the propriety of his extended-term sentence on direct appeal and has not done so here. Appellate counsel's omission, to which she readily admits, likewise merely serves to avoid the bar of forfeiture. See *People v. Black*, 314 Ill. App. 3d 276, 279, 732 N.E.2d 716 (2000) (appellate counsel's ineffectiveness permits the court of review to reach the merits of an otherwise forfeited issue).

Having made no showing of a constitutional due process violation, the defendant is no better off making this same claim as one against counsel. As Judge Sacks made clear, the defendant was not prejudiced by the incorrectly identified sentencing range. Regardless of where the defendant seeks to place fault, as a due process violation or as a violation of his right to counsel, the conclusion that no constitutional violation occurred remains the same. See *People v. Ward*, 187 Ill. 2d 249,

---

[4]This explains the defendant's claim in his main brief that Judge Sacks "prejudged" the sentencing issue, warranting a remand before a different judge. While through the defendant's eyes Judge Sacks evinced a predetermination of this sentencing issue, we see his comments as reflecting his familiarity with the case. See *People v. Davis*, 369 Ill. App. 3d 384, 394, 867 N.E.2d 987 (2006) (circuit court judge that presided over trial is in best position to determine prejudicial impact of alleged errors raised in postconviction petition based on his familiarity with the evidence presented).

260, 718 N.E.2d 177 (1999) (no ineffectiveness shown where claimed deficiencies by counsel did not result in reversible errors); *People v. Shatner*, 174 Ill. 2d 133, 144, 673 N.E.2d 258 (1996) (an ineffective assistance of counsel claim may be disposed based on lack of prejudice); *Coleman*, 183 Ill. 2d at 397 (no prejudice if there is no reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different).

## Ferguson's Testimony

■ The defendant contends the State's failure to disclose Darryl Ferguson's entire criminal record to the defense violated *Brady v. Maryland*, 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97 (1963), and the State's failure to correct Ferguson's false trial testimony concerning his adult criminal history violated the defendant's due process rights at his sentencing hearing.

The defendant argues Ferguson's testimony was critical to Judge Sacks's determination that the defendant committed the offense in an exceptionally brutal and heinous manner, thus warranting an extended-term sentence. In his main brief, the defendant argues Ferguson's adult conviction and his pending cases "easily may have provided Ferguson with motive to testify falsely, in hopes of currying favor with the State on his pending case and probation violation." The defendant claims that the State's alleged misconduct in failing to disclose Ferguson's entire criminal history and correct his testimony concerning it, prevented the defendant from fully challenging Ferguson's credibility at trial. The defendant argues that evidence of Ferguson's criminal history would have "caused the trial court to view both Ferguson's testimony and the whole of the evidence in a different light."

The State contends the defendant has waived review of the *Brady* violation issue because he failed to raise it on direct appeal. See *People v. Simpson*, 204 Ill. 2d 536, 549, 792 N.E.2d 265 (2001) (affirming the second-stage dismissal of the defendant's postconviction petition where the trial court found the defendant's claim of an alleged *Brady* violation was waived because he failed to raise it on direct appeal). Here, the defendant claimed he told his trial counsel as early as July 1997 that Ferguson was imprisoned on a criminal charge.

In *Brady*, the United States Supreme Court held a prosecutor violates a defendant's due process rights when, regardless of motive, the prosecutor suppresses evidence material to the question of the accused's guilt or innocence, after there has been a specific request for its production. "To establish a *Brady* violation, the defendant must show (1) that the evidence was favorable to him, (2) that the prosecu-

tor failed to disclose the evidence in response to a specific request, and (3) that the evidence was material." *People v. Velez*, 123 Ill. App. 3d 210, 217, 462 N.E.2d 746 (1984). The *Brady* rule has been codified in Illinois by Supreme Court Rule 412(c). 188 Ill. 2d R. 412(c). "Information that may cast doubt on the credibility of a State witness tends to negate the guilt of the accused and must be disclosed." *People v. Sharrod*, 271 Ill. App. 3d 684, 688, 648 N.E.2d 1141 (1995), citing *People v. Preatty*, 256 Ill. App. 3d 579, 627 N.E.2d 1199 (1994). Impeachment evidence, such as prior convictions, probationary status and pending criminal charges, is evidence favorable to the accused and, therefore, must be disclosed to the defendant during discovery. *Sharrod*, 271 Ill. App. 3d at 688.

The State argues that even if we decline to find forfeiture based on the defendant's failure to raise this issue on direct appeal, he is unable to establish any violation of his due process rights because Ferguson's additional criminal history was not material to the defendant's case. Favorable evidence is material " ' "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." ' " *People v. Page*, 193 Ill. 2d 120, 158-59, 737 N.E.2d 264 (2000), quoting *People v. Hobley*, 182 Ill. 2d 404, 432-33, 696 N.E.2d 313 (1998), quoting *United States v. Bagley*, 473 U.S. 667, 682, 87 L. Ed. 2d 481, 494, 105 S. Ct. 3375, 3383 (1985).

Based on our review of the record, we find no reasonable probability that the disclosure of Ferguson's adult criminal history would have resulted in a different outcome of the defendant's sentencing hearing. In making this claim, the defendant fails to recall that it was brought out at trial that Ferguson had been found delinquent as a juvenile both for aggravated battery and for possession of a stolen motor vehicle. His credibility was substantially impeached. The defendant appears to claim that with the additional evidence of Ferguson's adult criminal history, the credibility scale already loaded down with his juvenile adjudication history would have tipped so far that Ferguson would have been simply unbelievable, thus eliminating his testimony as a basis to find the defendant's criminal act exceptionally brutal and heinous for purposes of sentencing.

Judge Sacks addressed this very claim and rejected it. "[Ferguson's adult criminal history] would have made no difference to me one way or another." He also noted that the medical examiner testified that the shot to the head was consistent with Chambers lying on the ground when it was inflicted. While on cross-examination the medical examiner qualified this conclusion with the possibility that the entry wound could also have been inflicted by Chambers running with his

head extended backwards when the taller defendant shot Chambers from behind, the record is barren of any testimony that Chambers ran from the defendant as the medical examiner described. In the absence of any such testimony, it is also possible that Chambers followed the age-old adage about putting your head down and running as hard as you can when confronted by danger. In any event, left unchallenged is Riggs's testimony that the defendant shot Chambers for the last time while he ran past the fallen Chambers.

More to the point, Judge Sacks made it clear that it was the totality of the incriminating evidence that formed the basis for his finding that the defendant engaged in exceptionally brutal and heinous conduct in committing murder in the second-degree. As Judge Sacks stated, Chambers, while fleeing from the defendant, was shot four times, any one of which could have been fatal, with the final shot "basically in the top of the man's head." We take from Judge Sacks's comments that it made little difference for his brutal and heinous finding whether the defendant inflicted that final shot when the defendant was standing over Chambers as Ferguson testified or while the defendant ran past Chambers as Riggs testified. The second-degree murder itself was committed in an exceptionally brutal and heinous manner.

We find nothing to support the defendant's claim that further impeachment of Ferguson based on his additional criminal history would have affected Judge Sacks's sentencing determination. As Judge Sacks stated in response to the defendant's suggestion that a longer criminal record of Ferguson might have made a difference, "it wouldn't have changed my mind in the slightest."

## Additional Witnesses

■ Finally, the defendant argues that trial counsel was ineffective for failing to present the testimony of Porter and Young, two individuals who purportedly witnessed the murder and whose testimony, according to their affidavits, would have contradicted the State's witnesses' version of the events, particularly that the defendant shot Chambers a final time after he had fallen to the ground. The defendant argues that had the court heard these witnesses' testimony, the sentencing decision would have been different.

Having essentially addressed the merits of this claim based on the defendant's *Brady* claim and having noted that the record contains the testimony of five witnesses (three for the State and two for the defendant) that the defendant fired the four shots in rapid succession, we find no merit to the defendant's claim that had defense counsel called Porter and Young, his sentence would have been different. Suf-

fice it to say, to the extent the extended-term sentence of 30 years was imposed, at least in part, on the implied finding by Judge Sacks that the final shot was inflicted while Chambers was on the ground, a finding that could be supported by the testimony of Riggs or the medical examiner (if not Ferguson), we find no basis to conclude that the testimony of Porter and Young, added to that of the five witnesses who testified that all the shots were fired rapidly, would have precluded that factual finding. See *People v. Ford*, 368 Ill. App. 3d 562, 571, 857 N.E.2d 900 (2006) (on sentencing issue, to establish actual prejudice under *Strickland*, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the defendant's sentence would have been different); *People v. Enis*, 194 Ill. 2d 361, 411-12, 743 N.E.2d 1 (2000) (the absence of cumulative evidence provides no support that counsel's performance was deficient).

The defendant has made no substantial showing that he received ineffective assistance based on trial counsel's failure to present the testimony of Porter and Young.

## CONCLUSION

The allegations in the defendant's petition, supported by affidavits, fail to make a substantial showing of any constitutional deprivation to warrant a third-stage proceeding, when viewed against the full and complete record before us. The trial court properly dismissed the defendant's second-stage postconviction petition.

Affirmed.

R. GORDON, P.J., and HALL, J., concur.