THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAMA SUNDARESH, Defendant-Appellant.

Second District   No. 2—86—0360

Opinion filed March 31, 1987.

Dennis M. Tobin, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Rama Sundaresh, M.D., was charged with 15 counts of delivery of a controlled substance in an indictment returned by a Lake County grand jury. Defendant was found guilty of all charges by a jury and was subsequently sentenced by the court to a 4-year term of imprisonment. Defendant now appeals from this judgment of the circuit court.

Defendant argues on appeal that: (1) the trial court erred in denying a defense motion to poll the jury during trial about a prejudicial newspaper article, and (2) the trial court abused its discretion in denying probation and in sentencing defendant to an excessive 4-year term of imprisonment. This second contention need not be addressed because we reverse and remand for a new trial based upon the first issue raised by defendant.

During the trial of this case, the court took precautions against the jury's being prejudiced by newspaper reports. The jurors were questioned during *voir dire* about whether they had read any newspa-

per articles about the case. Also, during *voir dire* and several times during the trial, the court admonished the jurors not to read any newspaper articles about the case. However, on the last day of trial, immediately prior to closing arguments, defense counsel moved that the court ask the jury if any of them had read anything about the case because that day the local newspaper had published an article about the trial.

The discussion concerning this motion was as follows:

"MR. BLOCK [for the defense]: Second, I looked in the News Sun today and there was rather a large article about this case. I know the Court's been admonishing the jurors not to read the newspapers. The jury did not come into the courtroom prior to lunch and the paper does come out around 11:30 right before lunch. I would ask the Court to inquire of the jury if in fact they have read any articles regarding this case and what bothers me is there's a lot of things in the article that were not presented in evidence, things which are substantially prejudicial to my client so I would ask the Court to inquire.

THE COURT: The Court has repeatedly adnauseum [*sic*] over and over again been admonishing the jury. Do you have any reason to believe that they have read it?

MR. BLOCK: I have no reason to believe the jury has read anything, but there are comments in here, Judge, that refer to possible deaths that may have occurred from accidental overdoses that my client may have given somebody and I think—usually I wouldn't even bring this to your attention, but I think the serious prejudicial impact that may occur with statements like that that weren't presented in court, you know, leads me to make this rather unusual request.

I mean I could show you the—

MR. GIBSON [for the State]: I haven't read the article, Judge—

MR. BLOCK: —article, Judge. If you want to read it, Judge. Frankly, I don't want you to even see the information because there may be a sentencing hearing in this case, but I have to bring it to the Court's attention because I think the jurors should—

THE COURT: Do you have any comment?

MR. DEROSE [for the State]: Well, Judge, as to what he says, I believe the Court has admonished the jury again and again and I would believe the jury would follow the Court's orders and since he has no basis other than that there's some

things written in an article that weren't mentioned in evidence as his fear, I don't think there's enough showing as to raise the issue or have these people start to speculate as to what was or was not printed.

MR. BLOCK: Judge, I know it was printed. Of course I don't know—

THE COURT: The question is, do we now start inquiring of the jurors as to various matters when all we know is that—and I'm not questioning your representation—that the media have reported it accurately or inaccurately or added other things to it.

MR. BLOCK: I have a motion that the Court should ask the jury if anybody's read anything about this case.

THE COURT: I know what your motion is.

MR. DEROSE: The State would be objecting. As I stated before.

THE COURT: Without other than just the fact that something appeared in the media, I think that sufficient [*sic*] has not been raised to now start making inquiry of every juror.

Bring in the jury."

Defense counsel did not offer the article as an exhibit at this time.

A post-trial motion was later filed raising in very specific terms the issue of the court's denial of the defense motion to poll the jury with respect to the newspaper article, and a copy of the article itself was attached to the post-trial motion as an exhibit. In addition to summarizing the evidence which had been admitted at trial, the article said:

"His [defendant's] medical license was suspended last summer after authorities determined that he wrote prescriptions for controlled drugs that may have caused the accidental overdoses of two Lake County residents."

At the hearing on the post-trial motion, and in the motion itself, the defense brought the court's attention to this court's opinion in *People v. Crowder* (1981), 99 Ill. App. 3d 500, 425 N.E.2d 994. The court explained its denial of this portion of the post-trial motion as follows:

"As to the newspaper matter, the defense counsel apparently had the article available to him and chose not to present it to the Court. He said in there he didn't want the Court to read it. Now defense counsel says I should have read something they didn't want me to read. I believe that the law is reasonably clear that the article must be produced and made a part of the record."

■■ In considering the issue raised, we will start by addressing a waiver argument made by the State. The State, without citation to any authority, claims that defendant waived the issue when:

"[D]uring the hearing on defendant's motion to poll the jury, trial counsel informed the judge that he did not want him to see the article because of the possibility of an imminent sentencing hearing."

This is very similar to the remarks made by the trial court at the hearing on the post-trial motion. Nonetheless, the record of the hearing on the motion to poll the jury does not support the claim that defendant waived the issue raised.

Defense counsel's remarks at the hearing on the motion to poll the jury, which are quoted above, make it clear that counsel was prepared to present the article, which he had described, to the court if the court wished to read it. While counsel also said that he did not want the court to read the article because of a possible sentencing hearing, this statement in context was not an objection to the court's reading the article but rather a complaint that circumstances had made it necessary that counsel offer the article to the court. We do not believe that counsel's expression of his lack of enthusiasm for the court's reading the article resulted in a waiver, where counsel's remarks made it clear that the article was available to the court if the court wished to read it. Moreover, the basis of the trial court's denial of the motion to poll the jury was that the mere appearance of the article in the local newspaper without any additional reason to believe any juror saw it was insufficient to require polling of the jury. The contents of the article were thus irrelevant to the trial court's decision, and presentation of the article to the court at the hearing would not have affected the ruling. The article was made part of the record in the post-trial motion, so we can review the propriety of the denial of the motion to poll the jury. (See *People v. Crowder* (1981), 99 Ill. App. 3d 500, 510, 425 N.E.2d 994, 1001 (and cases cited therein).) Therefore, the issue was not waived, and its merits will be considered.

■■■ The question of whether a jury should be questioned about a particular newspaper article rests in the sound discretion of the trial court. (*People v. Weaver* (1980), 90 Ill. App. 3d 299, 307, 412 N.E.2d 1353, 1360, *aff'd* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) The underlying claim of error in all cases such as that at bar is not that the trial court erred in refusing to question the jury but rather that under all of the facts and circumstances in the record, the trial court improperly exercised its discretion by denying the request that the jury be

questioned. *(People v. Weaver* (1980), 90 Ill. App. 3d 299, 307, 412 N.E.2d 1353, 1360-61, *aff'd* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) In exercising its discretion:

> "[T]he trial court is required to make a two-part analysis when an allegation of prejudicial publicity is raised. Step one is a consideration of the nature of the publicity, its content and its potential for prejudice. *(People v. Cox* (1966), 74 Ill. App. 2d 342, 220 N.E.2d 7.) If the trial court determines the publicity is not prejudicial, there is no need to poll the jury. *(People v. Hurley* (1973), 10 Ill. App. 3d 74, 293 N.E.2d 341.)" *(People v. Cordova* (1980), 83 Ill. App. 3d 147, 149, 403 N.E.2d 788, 789, quoted in *People v. Crowder* (1981), 99 Ill. App. 3d 500, 509, 425 N.E.2d 994, 1000.)

As this quote intimates, when news coverage during a criminal trial raises a question as to the possibility that jurors may have been exposed to prejudicial publicity, a *voir dire* of the jury is both the better, and the most frequently utilized, practice. (See *People v. Miller* (1983), 120 Ill. App. 3d 495, 501-03, 457 N.E.2d 1373, 1379-80.) In the case at bar, the trial court improperly exercised its discretion when it denied the motion to poll the jury without reading the article and considering "the nature of the publicity, its content and its potential for prejudice." *People v. Cordova* (1980), 83 Ill. App. 3d 147, 149, 403 N.E.2d 788, 789, quoted in *People v. Crowder* (1981), 99 Ill. App. 3d 500, 509, 425 N.E.2d 994, 1000; see also *People v. Weaver* (1980), 90 Ill. App. 3d 299, 307, 412 N.E.2d 1353, 1361, *aff'd* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.

■ Because the article was made a part of the record, we can proceed to determine whether a failure to poll the jury about it on request of defendant was an improper exercise of discretion. (See *People v. Crowder* (1981), 99 Ill. App. 3d 500, 510-11, 425 N.E.2d 994, 1001; *cf. People v. Weaver* (1980), 90 Ill. App. 3d 299, 308, 412 N.E.2d 1353, 1361, *aff'd* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) The article summarized the evidence presented at trial. In addition, it contained the information that defendant's medical license had been suspended "after authorities determined that he wrote prescriptions for controlled drugs that may have caused the accidental overdoses of two Lake County residents." The issue at trial was whether defendant had prescribed controlled substances on several occasions in good faith. In that context, information that defendant's medical license had been suspended for his writing prescriptions for controlled substances which may have resulted in two accidental overdoses in unrelated cases could have had a severely prejudicial effect on the jury. In-

deed, the State at oral argument conceded that the article itself was prejudicial (albeit, while contending that any error was harmless on the facts of this case). Thus, the failure to question the jury on this matter was an abuse of discretion entitling defendant to a new trial. *People v. Crowder* (1981), 99 Ill. App. 3d 500, 511, 425 N.E.2d 994, 1001.

■ The State makes several arguments which remain to be addressed. The State argues that the failure of defendant to seek sequestration of the jury is a factor to be considered in reviewing the trial court's exercise of its discretion, and there is some support for this position in the reported cases. (See, *e.g., People v. Johnson* (1966), 35 Ill. 2d 516, 519-20, 221 N.E.2d 497, 499.) Although this factor may be of importance in an appropriate case, it is not of much importance in the case at bar where there is no indication that sequestration would have been either appropriate or granted by the trial court. Where a motion to sequester would have been useless at best, and frivolous at worst, the failure to make such a motion is a factor of little importance in reviewing the trial court's exercise of its discretion in deciding whether to poll the jury.

■ The State also argues that we should reconsider *People v. Crowder* (1981), 99 Ill. App. 3d 500, 425 N.E.2d 994. Essentially, the State's position is that *Crowder* and a case *Crowder* relied upon, *People v. Cordova* (1980), 83 Ill. App. 3d 147, 403 N.E.2d 788, are contrary to two Illinois Supreme Court cases (*People v. Hairston* (1970), 46 Ill. 2d 348, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658, and *People v. Johnson* (1966), 35 Ill. 2d 516, 221 N.E.2d 497) and so were wrongly decided. We disagree. In *Crowder* we carefully considered prior cases on the subject at bar, including *Hairston* (which was based upon *Johnson*). (*People v. Crowder* (1981), 99 Ill. App. 3d 500, 509-10, 425 N.E.2d 994, 1000-01.) We continue to believe that *Crowder* was correctly decided and decline the State's apparent invitation to overrule it.

■ The State also seeks to distinguish *Crowder* on two grounds. First, the State argues:

> "[I]n *Crowder*, this Court was annoyed that the prosecutor had apparently leaked the information to the press and thus was the cause of the article being published. The *Crowder* Court specifically noted the prosecution's 'open involvement in the dissemination of the damaging materials [*sic*].' Here we have no such problem."

The State's quotation from *Crowder* is accurate as far as it goes, but is misleading in what it omits. After the court had held that "due pro-

cess required at least a collective poll of the jury," the court made the remark quoted. The full sentence reads:

"The prosecution's open involvement in the dissemination of the damaging material provides an added reason for this result." (*People v. Crowder* (1981), 99 Ill. App. 3d 500, 511, 425 N.E.2d 994, 1001.)

From the full sentence, in the context in which it appears in the opinion, it can be seen that the distinguishing fact the State relies upon was not necessary to the result reached in *Crowder*, but was noted as additional support for the conclusion the court had already reached.

The other claimed distinction between the case at bar and *Crowder* is that "in *Crowder*, the error was prejudicial, ostensibly due in part to the prosecutor's leak to the press," and in the case at bar "any error was clearly harmless." This claim is flawed on both counts.

■ The interpretation of *Crowder* is incorrect. The analysis required by *Crowder* requires a determination of whether the article at issue (not the error) was prejudicial. In the case at bar it was. Although prosecutorial involvement in leaking prejudicial information to the press provides an added reason for ordering a new trial, it is ultimately subsidiary to the primary reason for ordering a new trial, which is to ensure that defendant's right to a trial by an impartial jury was not violated.

The State's claim that any error in this case was harmless is also incorrect. First, there appears to be a substantial question as to whether the harmless error doctrine is applicable to the issue at bar. The case cited by the State, *People v. Norwood* (1980), 83 Ill. App. 3d 454, 404 N.E.2d 577, does not, as we read it, explicitly or implicitly address the subject. This question, however, need not be addressed here because, assuming *arguendo* the error could be harmless, it was not in the case at bar.

■ As noted previously, the issue at trial was whether defendant wrote the prescriptions in good faith. The article at issue contained, *inter alia*, unadmitted and inadmissible information about the suspension of defendant's medical license "after authorities determined that he wrote prescriptions for controlled drugs that may have caused the accidental overdoses of two Lake County residents." Knowledge of this information could have weighed heavily in finding defendant had not written the prescriptions in good faith. Although it appears that the State's evidence from which defendant's lack of good faith could be inferred was stronger than defendant's evidence rebutting his lack of good faith, it cannot be said that a juror's

reading of the article would be harmless beyond a reasonable doubt on the record in this case. Thus, it also cannot be said that the court's improper exercise of its discretion by failing to question the jurors about the article was harmless beyond a reasonable doubt.

The judgment of the circuit court of Lake County is therefore reversed, and this cause is remanded for a new trial.

Reversed and remanded.

HOPF and DUNN, JJ., concur.