NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210695-U

NO. 4-21-0695

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 14, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| JOSHUA LOSCHEN, | ) | No. 19CF642 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mark S. Goodwin, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Turner and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court did not commit error when it declared a mistrial, or by denying defendant's motion to dismiss based on double jeopardy after declaring the mistrial.

¶ 2     After an evidentiary hearing on defendant's alleged contacts with jurors, the trial court declared a mistrial. Defendant then filed a motion to dismiss on double jeopardy grounds. The court denied his motion. In this appeal, defendant asserts the court erred by (1) declaring a mistrial without considering alternatives there to and (2) denying his motion to dismiss. We affirm.

¶ 3                          I. BACKGROUND

¶ 4     On November 22, 2019, in the circuit court of Vermilion County, a grand jury indicted defendant for aggravated battery of a person 60 years of age or older (720 ILCS 5/12-3.05 (d)(1) (West 2018)). By the lunch recess on May 18, 2021, 12 jurors and 2 alternate jurors had

been selected for defendant's trial. With defendant present, the trial court admonished the jury not to discuss the case with anyone and to report to one of the bailiffs if anyone were to speak to them.

¶ 5 At the conclusion of the noon recess, the trial court noted it had been advised several witnesses reported observing defendant talking with jurors during the break, and that two jurors reported defendant spoke to them during the recess. The court stated it was inclined to declare a mistrial if defendant admitted the foregoing occurred, or if a hearing confirmed what had been reported to the court. Defendant advised he wished to have a hearing because he denied having inappropriate contact with the jurors.

¶ 6 The trial court first examined Ashley Castillo, who was the court clerk present for the selection of the jury as well as the court's admonishments prior to the lunch recess. Castillo testified defendant attempted to leave the courtroom before the jurors finished departing, which she believed he did for the purpose of talking to jurors. To prevent defendant from speaking to the jurors, Castillo said his last name and put her hand out for him to stop. Defendant did so. After leaving the courtroom, Castillo saw defendant speaking to one of the jurors in the stairwell but did not hear what defendant said.

¶ 7 During the lunch recess, Castillo also saw defendant in his vehicle pull alongside two jurors who were on a sidewalk and speak to them. The jurors did not stop walking, and Castillo did not hear what defendant said to them. Neither of these two was the juror Castillo saw defendant speak to on the stairs in the courthouse. Castillo did not believe defendant was following these jurors.

¶ 8 Greg Woodward testified he was one of the bailiffs who was present for jury selection, and took a report from two jurors about defendant's contact with them while they were at a restaurant over the lunch recess. These jurors advised Woodward defendant approached the

table at which they were sitting and said, "Thank you for serving." Defendant said nothing else, but one of the jurors told Woodward the foregoing made him uncomfortable such that the two left the establishment.

¶ 9        Adam Watson testified he was a deputy with the Vermilion County Sheriff's Office, next to whom defendant sat outside the courtroom near the end of the lunch recess. Watson observed defendant wave to three of the jurors as they were returning from lunch. Watson believed one of the jurors responded to defendant's wave with a smile. Defendant did not attempt to speak to any of these jurors, but told Watson, "Thank you for showing up today, and thank you for your service."

¶ 10        After hearing from the witnesses, the trial court acknowledged it directed the jurors to have no contact with others about the matter but did not admonish defendant directly. The court commented it had never observed a court so admonish a defendant because it's an "accepted truth" defendants cannot have conversation with jurors. The court noted observing, while admonishing the jurors prior to lunch, defendant rise, and defendant's counsel, in response, directing defendant to wait. As well, the court saw defendant immediately and "impatiently" walk around and behind his counsel. It was then the court noticed Castillo directing defendant to wait.

¶ 11        The trial court noted defendant's apparent "eagerness" to join the jurors, presumably "to share pleasantries with them." The court found the totality of the circumstances "disturbing" and inappropriate. The court believed defendant's contacts were "willful" and constituted "jury tampering." For these reasons, the court declared a mistrial and directed the parties to coordinate dates with the circuit clerk for a new trial.

¶ 12        Subsequently, defendant's attorney sought leave to withdraw, which request the court later granted. After new counsel entered his appearance for defendant, in August 2021,

defendant filed a motion to dismiss, asserting his continued prosecution violated the constitutional protections against double jeopardy. On November 10, 2021, after argument, the court denied the motion to dismiss.

¶ 13    This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    Defendant appeals from the trial court's order denying his motion to dismiss on double jeopardy grounds. He claims the court erred in declaring a mistrial based upon his contact with certain jurors. He argues the court did not satisfy the "manifest-necessity" prerequisite or consider alternatives before declaring a mistrial without his consent. Because, he claims, the court should not have declared a mistrial under these circumstances, jeopardy attached with the impaneling and swearing in of the jury and thus, the subsequent prosecution was barred.

¶ 16                            A. Standard of Review

¶ 17    We review both a trial court's determination of whether manifest necessity warrants a mistrial and a court's ruling on a motion to dismiss on double jeopardy grounds for an abuse of discretion. *People v. Edwards*, 388 Ill. App. 3d 615, 624-25 (2009).

¶ 18                B. The Trial Court Did Not Abuse Its Discretion

¶ 19                            1. *Manifest Necessity*

¶ 20    When a court declares a mistrial without the consent of the defendant, a retrial can go forward if "manifest necessity" warranted the mistrial. *People v. Street,* 316 Ill. App. 3d 205, 211 (2000). When examining whether such necessity required a mistrial, the court should consider the following factors:

> "(1) whether the difficulty was the product of the actions of the prosecutor, defense counsel, or trial judge, or was events over which the participants lacked control;

- 4 -

(2) whether the difficulty could have been intentionally created or manipulated by the prosecution to strengthen its case; (3) whether the difficulty, prejudice, or other legal complication might have been 'cured' by another alternative that would have preserved the trial's fairness; (4) whether the trial judge actually considered the alternatives to a mistrial; (5) whether a subsequent conviction would be subject to reversal on appeal; (6) whether the trial judge acted in the heat of the trial confrontation; (7) whether the trial judge's decision rested on an evaluation of the demeanor of the participants, the 'atmosphere' of the trial, or any other factors that similarly are not amenable to strict appellate review; (8) whether the trial judge granted the mistrial solely for the purpose of protecting the defendant against possible prejudice; (9) whether the evidence the State presented, prior to the mistrial, suggested a weakness in its case (*e.g.,* a witness failed to testify as anticipated); (10) whether the jurors had heard enough of the case to formulate some tentative opinions; (11) whether the case had proceeded so far as to give the prosecution a substantial preview of the defense's tactics and evidence; and (12) whether the composition of the jury was unusual." *Id.* at 211-12.

¶ 21    Recognizing the often unique and varying circumstances presented by a criminal trial, there is no "mechanical formula" a trial court must follow. (Internal quotation marks omitted.) *Edwards,* 388 Ill. App. 3d at 624. Instead, our abuse-of-discretion review affords the trial court the utmost deference or " 'highest degree of respect,' " as those courts are more familiar with the relevant factors than we could be. *Id.* at 624-25 (quoting *People v. Segoviano*, 189 Ill. 2d 228, 241 (2000)). Indeed, the trial court is "best situated" to make a reasoned decision regarding a mistrial and is afforded the flexibility to fashion a remedy in each unique matter when considering the

question. *People v. Barfield,* 288 Ill. App. 3d 578, 584 (1997). In some matters, individual instances of conduct may not require a mistrial, but the cumulation of such errors warrants such action. *Id.*

¶ 22 Though the right to be free from double jeopardy is meant to protect defendants, the State is also entitled to an unbiased jury such that defendants' rights must sometimes be subordinated to "the public's interest in fair trials." (Internal quotation marks omitted.) *Illinois v. Somerville,* 410 U.S. 458, 470 (1973). If a trial court learns of facts suggesting one or more members of the venire could be biased against the defendant or the State, its duty is to declare a mistrial. *Id.*

¶ 23 Recognizing the foregoing, the trial court, court clerk, and defendant's attorney independently appear to have concluded, during the court's admonitions to the jury prior to the lunch recess, defendant sought to initiate contact with jurors at the commencement of the recess. The latter two both attempted to prevent such contact, which the court witnessed. However, after the court admonished the jury, admonishments which defendant presumably heard, and after being stopped by the court clerk and his own attorney, defendant immediately thereafter approached and spoke to one of the jurors. Within the next hour, defendant maneuvered his vehicle to the sidewalk and spoke with two other jurors there. During this timeframe, defendant also located two other jurors in a restaurant and thanked them for their service. Finally, at the conclusion of the recess, defendant waved to three other members of the venire. In total, defendant initiated some manner of communication with eight jurors.

¶ 24 From defendant's actions, the trial court certainly could have concluded defendant wanted to ingratiate himself with members of the jury. It is possible each individual contact was insufficient in and of itself to warrant a mistrial. We also agree with the court defendant's actions

may have adversely affected the jurors' perceptions of defendant himself. Nevertheless, the court's conclusion the cumulative contacts were willful and amounted to "tampering" justifiably constituted the manifest necessity supporting declaration of a mistrial.

¶ 25                                2. *Alternatives to a Mistrial*

¶ 26        Defendant argues the trial court abused its discretion in declaring a mistrial before first considering alternatives. Defendant faults the court because (1) it did not interview or inquire of any of the jurors directly whether they could be impartial given defendant's contact, (2) the only evidence of any impact on juror impartiality was Woodward's testimony that one juror told him he was uncomfortable, (3) the court could have seated alternate jurors, and (4) the court could have offered a jury of less than 12 persons.

¶ 27        As for defendant's suggestion the trial court could have inquired of the jurors contacted by defendant to determine if they could still be impartial, such polling is not required. *People v. Black,* 314 Ill. App. 3d 276, 279-80 (2000). In fact, polling for such purpose may inject more bias and thus outweigh any prejudice from the underlying jury contact. *Id.* at 280.

¶ 28        As to the option of seating alternate jurors, or offering defendant a jury of less than 12, we agree with the State, the trial court could have been reasonably concerned the court's sudden removal of the contacted jurors would have had an adverse effect on the impartiality of such jury eventually empaneled.

¶ 29        Thus, given the wide discretion afforded a trial court to achieve jury impartiality, and given the close and unique perspective of the trial court, we find no abuse of discretion in either the declaration of a mistrial based on defendant's contact with members of the jury, or in the subsequent denial of the motion to dismiss.

¶ 30                                III. CONCLUSION

- 7 -

¶ 31         For the foregoing reasons, we affirm the trial court's judgment.

¶ 32         Affirmed.