**NOTICE**

Decision filed 06/21/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210137-U

NO. 5-21-0137

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

**NOTICE**

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 97-CF-448 |
| | ) | |
| VON D. JONES, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court erred in dismissing the defendant's amended postconviction petition at the second stage of the postconviction proceedings where the defendant made a substantial showing that his appellate counsel was ineffective for failing to argue that his speedy-trial rights were violated and where he made a substantial showing that his counsel deprived him of his right to testify.

¶ 2    In April 2021, the circuit court of St. Clair County granted the State's motion to dismiss the defendant, Von Jones's, amended postconviction petition during the second stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant appeals this dismissal, arguing that the court's order should be reversed and this case remanded for a third-stage evidentiary hearing because he made a substantial showing that his trial and appellate counsel were ineffective for failing to argue that his speedy-trial rights were

1

violated, and his counsel deprived him of his right to testify. For the reasons that follow, we reverse and remand for a third-stage evidentiary hearing.

¶ 3                                    I. BACKGROUND

¶ 4      The facts necessary to our disposition of this appeal follow. At a May 2000 jury trial, the defendant was convicted of two counts of first degree murder for the shooting deaths of two individuals. Subsequently, he was sentenced to mandatory life imprisonment. In his direct appeal from his convictions, he argued that the State had failed to prove him guilty beyond a reasonable doubt. This court disagreed and affirmed his convictions. *People v. Jones*, No. 5-00-0640 (2002) (unpublished order under Supreme Court Rule 23). He then filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on October 2, 2002.

¶ 5      On April 3, 2003, the defendant filed a *pro se* petition for postconviction relief, claiming the following constitutional violations: (1) he was denied his statutory and constitutional right to a speedy trial; (2) he was denied his right to a fair and impartial trial when the trial court failed to inquire during *voir dire* if any panel members would be prejudiced by knowledge of his alleged drug dealer status; (3) he was denied a fair trial and due process where the State relied on statements of coerced witnesses; (4) the court and his trial counsel failed to advise him that he had a constitutional right to testify; (5) the prosecutor committed misconduct by improperly vouching for witness credibility, improperly arguing that the State knew the truth in this case, and improperly asserting that the police would do nothing wrong and that they did "good work"; and (6) his trial counsel and appellate counsel were ineffective.

¶ 6      On July 1, 2003, the trial court concluded that the defendant had raised the gist of a constitutional claim on at least one of his claims, and appointed counsel to represent him in the postconviction proceedings. After nearly 13 years of postconviction counsel seeking continuances

2

to file an amended postconviction petition, counsel elected to stand on the defendant's *pro se* petition. On February 8, 2016, the State filed a motion to dismiss the postconviction petition, contending that the postconviction petition was untimely; the defendant's claims were forfeited because they were not raised prior to trial, at trial, in his posttrial motion, or in his direct appeal; his ineffective assistance of counsel claims did not satisfy *Strickland v. Washington*, 466 U.S. 668 (1984); and his claims were not outcome determinative.

¶ 7 On February 18, 2016, the trial court granted the State's motion to dismiss, finding, *inter alia*, that the defendant's speedy-trial claims were without merit and that the record failed to memorialize any facts to support his allegation that he wished to testify but counsel refused. The defendant appealed this dismissal, and in light of the extraordinary passage of time between when the defendant filed his *pro se* postconviction petition and when the trial court ruled on the petition, this court reversed and remanded for further second-stage proceedings and appointment of new counsel. *People v. Jones*, 2019 IL App (5th) 160083-U. This court did not address the substantive issues raised in the postconviction petition.

¶ 8 Following remand, the defendant was appointed counsel, and new counsel filed an amended postconviction petition on December 28, 2020. The amended petition asserted the following pertinent ineffective assistance of trial counsel claims: the defendant was denied his right to testify at his trial either by trial counsel's intent or negligence, and his counsel was ineffective for failing to argue that he was denied his right to a speedy trial when the trial court improperly allowed the State to continue the trial beyond the statutory 120-days without showing due diligence. The amended petition also asserted that appellate counsel was ineffective for, *inter alia*, failing to raise these issues on direct appeal. On December 28, 2020, counsel filed a certificate in compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017).

3

¶ 9    On January 28, 2021, the State filed a motion to dismiss the defendant's amended postconviction petition, arguing, in pertinent parts, that the majority of the issues raised in the amended petition were included in the defendant's *pro se* petition and addressed in the trial court's earlier ruling, that most of his claims involved matters that were either decided on direct appeal or could have been raised on appeal as they concerned matters that were contained in the record, and his claims of ineffective assistance of appellate counsel failed to show that counsel's performance was deficient or that the claimed deficiency prejudiced him in any way.  On April 29, 2021, the trial court entered an order, dismissing the defendant's amended postconviction petition.  With regard to the claims relevant to this appeal, *i.e.*, the speedy-trial violation and violation of his right to testify, the court found that those issues could have been raised during the defendant's direct appeal of his conviction.  Thus, the court found that those issues were waived.  However, even if those issues were not waived, the court found that the State's arguments against those issues in its motion to dismiss were well-taken.  Accordingly, the court found that there was no merit to those claims.  As for the defendant's arguments that his appellate counsel was ineffective, the court found that counsel could not be deemed ineffective for having failed to raise meritless claims on appeal.  The defendant appeals.

¶ 10                                II. ANALYSIS

¶ 11                          A. Postconviction Rules

¶ 12    The Act provides a three-stage procedure for a petitioner alleging substantial deprivations of his constitutional rights.  *People v. Hodges*, 234 Ill. 2d 1, 10 (2009).  At the first stage, the trial court, without input from the State or further pleadings from petitioner, determines if the petition is frivolous or patently without merit.  *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).  If the petition is not dismissed at this stage, then it advances to the second stage where counsel may be

4

appointed to indigent petitioners (725 ILCS 5/122-4 (West 2020)) and where the State is permitted to file a motion to dismiss or an answer to the petition (*id.* § 122-5). *Hodges*, 234 Ill. 2d at 10-11. At this stage, the court must determine whether the petition makes a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If petitioner satisfies his burden of making a substantial showing of a constitutional violation, then the petition advances to a third-stage evidentiary hearing. *Id.* However, if no such showing is made, then the petition is dismissed. *Id.* The second-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Chears*, 389 Ill. App. 3d 1016, 1024 (2009).

¶ 13                                            B. Forfeiture

¶ 14     The defendant first argues that the trial court improperly found that the arguments raised in his amended postconviction petition were forfeited. A postconviction proceeding is not an appeal of the underlying judgment, but rather a collateral proceeding that allows review of constitutional issues that were not, and could not have been, adjudicated on direct appeal. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009). Therefore, issues that were raised and decided on direct appeal are barred from consideration by *res judicata*, and issues that could have been raised, but were not, are considered forfeited. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008).

¶ 15     Specifically, with regard to the argument that his counsel deprived him of his constitutional right to testify at trial, the direct appeal record did not contain sufficient information to litigate this constitutional claim. The forfeiture doctrine does not apply to issues raised in a postconviction petition that stem from matters outside the record and could not have been brought on direct appeal. *People v. Piper*, 272 Ill. App. 3d 843, 846 (1995). The issue here of whether the defendant's counsel deprived him of his right to testify at trial is one that can only be proven by facts (if they exist) outside the record as there is nothing in the record indicating that the defendant waived his

5

right to testify, that his counsel discussed this constitutional right with him, or that the trial court admonished him concerning his right to testify. Because the allegations contained in the defendant's amended petition require an inquiry into certain matters outside the record, this issue was not forfeited. See *id*. (the issue of whether petitioner's attorney deprived him of his constitutional right to testify on his own behalf could only be proven by facts outside the record, and therefore, the issue could not be raised on direct review and was not forfeited).

¶ 16 Moreover, the doctrine of forfeiture is relaxed when the alleged forfeiture stems from ineffectiveness of appellate counsel. *People v. Black*, 314 Ill. App. 3d 276, 279 (2000). In this case, the defendant asserted that his appellate counsel was ineffective for failing to argue, on direct appeal, that his speedy-trial rights and his right to testify were violated. Because he could not have raised appellate counsel's effectiveness at any time prior to the instant proceeding, we will address the merits of these arguments.

¶ 17                    C. Ineffective Assistance of Counsel Rules

¶ 18 A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient, and that the deficient performance prejudiced defendant. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10. The deficient-performance prong requires a defendant to show counsel's performance fell below an objective standard of reasonableness. *Id*. To establish the second prong, a defendant must show that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *Id*. A defendant must satisfy both prongs, and a failure to satisfy either prong precludes a finding of ineffectiveness. *Id*.

6

¶ 19    "Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel." *People v. Childress*, 191 Ill. 2d 168, 175 (2000).  Appellate counsel renders ineffective assistance by failing to raise an issue on direct appeal if that failure was objectively unreasonable, and the decision prejudiced defendant. *People v. Easley*, 192 Ill. 2d 307, 328-29 (2000).  However, appellate counsel is not required to brief every conceivable issue on appeal, and it is not incompetence of counsel to refrain from raising issues which, in counsel's judgment, are without merit, unless counsel's decision is patently wrong.  *Id.* at 329.  Thus, unless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal.  *Id*.

¶ 20                              D. Speedy-Trial Violation

¶ 21    The defendant's first ineffective assistance of counsel claim rests on whether he was denied his right to a speedy trial.  In Illinois, a criminal defendant has a constitutional and statutory right to a speedy trial.  *People v. Phipps*, 238 Ill. 2d 54, 65 (2010).  Although Illinois's speedy-trial statutes implement the constitutional right, the statutory and constitutional rights are not coextensive.  *People v. Sandoval*, 236 Ill. 2d 57, 67 (2010).  The U.S. Constitution guarantees a right to a speedy trial but does not set forth the number of days that constitute a speedy trial.  U.S. Const., amends. VI, XIV.  Under the constitutional analysis, the determination of whether a defendant's right to a speedy trial has been violated depends on such factors as the length of the delay in trial, the reasons for the delay, defendant's assertion of the speedy-trial right, and prejudice to defendant caused by the delay.  *People v. Staten*, 159 Ill. 2d 419, 426 (1994).

¶ 22    In contrast, the Illinois speedy-trial statute specifies the exact number of days within which a trial must be granted to satisfy the speedy-trial requirement.  See 725 ILCS 5/103-5(a) (West 2000).  Section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) provides that, when a

7

defendant is held in custody, he must be brought to trial within 120 days from the date he was taken into custody. *Id*. To prove a statutory speedy-trial violation, defendant has to show that he has not been tried within the 120-day period and that he has not caused or contributed to the delay. *Staten*, 159 Ill. 2d at 426. Counsel's failure to seek discharge on speedy-trial grounds generally will be deemed ineffective assistance of counsel if there is a reasonable probability that defendant would have been discharged had a timely motion for discharge been made and no justification was proffered for counsel's failure to bring the motion. *Id*. However, counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if there is no lawful basis for raising a speedy-trial objection. *Phipps*, 238 Ill. 2d at 65.

¶ 23 Here, the defendant was arrested on either April 24 or April 26, 1997,[1] and his jury trial commenced on May 1, 2000. He contends that he was entitled to discharge on January 6, 1998. The defendant asserts that he did not do anything to delay the trial until July 3, 1997,[2] when he and the State jointly agreed to a continuance. The defendant argues that, at that point, 70 days had passed in the speedy-trial period. However, the State contends that, from April 26, 1997, through July 8, 1997, the delay attributable to the State would be 47 days because, on June 2, 1997, the defendant filed a request for the grand jury transcript, which was not completed until July 8. The trial was again continued beginning November 14, 1997, because the State had not received DNA testing results. On December 30, 1997, the State requested another continuance for this same reason.

---

[1]Although in the State's December 30, 1997, motion to continue, the State asserted that the defendant was arrested on April 24, 1997, in its appellee brief, the State argued that the defendant was arrested on April 26, 1997. The April 26 arrest date was supported by an arrest warrant executed on that date that is included in the record of appeal. However, an April 24 docket entry noted that the defendant was arrested on this date.

[2]The joint motion to continue was filed on July 3. However, the continuance was granted on July 1.

¶ 24   Although the State again requested a continuance on January 27, 1998, the following day the defendant filed a notice of alibi defense.  The State claims that the delay caused by the defendant's late filing of an alibi defense, nine months after his arrest, was attributed to the defendant and tolled the speedy-trial time until February 24, 1998.  See *People v. Cross*, 2022 IL 127907, ¶¶ 27-28.   Thereafter, on February 24, 1998, on the State's motion and over the defendant's objection, the trial court scheduled a status hearing for March 12, 1998.  There were then several continuances at the defendant's request, but the defendant contends the speedy-trial time had already expired at this point.

¶ 25   Based on the above, it appears that the speedy-trial issue mainly turns on whether the State sufficiently demonstrated its due diligence in seeking DNA evidence under section 103-5(c) of the Code (725 ILCS 5/103-5(c) (West 1996)).  Section 103-5(c) provided:

> "If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." *Id.*

¶ 26   Although section 103-5(c) does not define due diligence, this court in *People v. Battles*, 311 Ill. App. 3d 991, 998 (2000), set out three requirements that must be met for the State to show due diligence.  Those requirements are as follows: (1) the State should provide a full explanation of each and every step taken to complete DNA testing within the 120-day term; (2) the steps articulated should comprise a course of action that a reasonable and prudent person intent upon completing tests within 120 days would follow; and (3) the State should explain why those efforts fell short of their objective and resulted in an unavoidable delay.  *Id*.

¶ 27   Applying the above requirements, this court then determined in *Battles* that the State failed to meet its burden of showing that it exercised due diligence to obtain DNA test results within the speedy-trial term.  *Id.* at 998-1000.  In making this decision, this court noted that the State's

9

comment that the crime laboratory was " 'quite backlogged' " did not permit a conclusion that diligent efforts to complete testing were unavoidably frustrated by the laboratory's workload as there would always be some backlog. *Id.* at 1001. Instead, the State should have explained more than the backlog's mere existence; it should have explained what reasonable and prudent effort was made to deal with that backlog and why the backlog hampered the effort to complete the particular testing at issue. *Id.* The court also noted that it took the State the majority of the speedy-trial time to decide whether to perform DNA testing, and the State made no effort to expediate testing before invoking section 103-5(c). *Id.* at 1004.

¶ 28    This court then applied the requirements set out in *Battles* when determining whether the State exercised due diligence in *People v. Workman*, 368 Ill. App. 3d 778, 785-86 (2006). There, the State explained in its motion for continuance that it acted diligently in obtaining laboratory analyses of the evidence in that the bulk of the items were taken to the crime laboratory in the week following the offense; there was a backlog at the crime laboratory; the evidence required a complicated and multi-level analysis; and the State spoke with laboratory personnel and learned that there was a delay because one of the technicians was on maternity leave, and the only other technician at the laboratory was pregnant and could not work with certain chemicals. *Id.* at 786. Based on the State's motion, this court found that the State seemed mindful of the requirements set out in *Battles* and concluded that the trial court did not err in finding that the State exercised due diligence, despite the delay. *Id.*

¶ 29    In the present case, the State's November 14, 1997, motion for continuance asserted that the State had exercised due diligence without success to obtain DNA testing results material to the case, there were reasonable grounds to believe that the DNA testing results would be obtained at a later date, and the interests of justice required a continuance of the trial. At the November 17

10

hearing, the defendant announced that he was ready for trial and that he was objecting to any continuance. However, in requesting the continuance, the State asserted that DNA testing was not complete, there were only two laboratories in Illinois that were doing DNA testing, the other laboratories were either "described as offline or being brought up to speed," and the testing should be complete in mid-December. The continuance was granted over the defendant's objection.

¶ 30    Again, on December 3, the State filed another request for a continuance based on the DNA testing not being complete and noted that, although the case was considered a priority, there was backlog on the testing because only two laboratories were doing testing, and the testing would not be complete until sometime in December. Subsequently, on December 30, 1997, the State filed another motion for continuance, which asserted that the State had exercised due diligence without success to obtain DNA testing results material to the case, and there were reasonable grounds to believe that the DNA testing results would be obtained at a later date. The State then requested that the trial court grant the continuance of the trial for not more than an additional 120 days. The case was continued until January 27, 1998.

¶ 31    On appeal, the defendant contends that the State's requested continuances failed to satisfy the requirements set out in *Battles*. In particular, the defendant argues that the State failed to allege sufficient facts explaining how the State exercised due diligence or what reasonable grounds existed that would support the additional delay, beyond a mere backlog. We find that the defendant has made a substantial showing that the State failed to establish due diligence where, pursuant to *Battles*, the mere existence of a DNA testing backlog is generally not sufficient to show due diligence and where the State failed to explain more than the backlog's existence. Also, the defendant has made a substantial showing that, if the State failed to establish due diligence during this time, the 120-day speedy-trial period would have ended at this point, and there was a

11

reasonable probability that the defendant would have been discharged. However, there is no indication in the record as to why the defendant's trial counsel failed to invoke the defendant's speedy-trial rights. Thus, we find that the defendant has made a substantial showing that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

¶ 32    In making this decision, we note that the State argues that some of the continuances during this time were at least partially the defendant's fault because he filed three motions, *i.e.*, a motion to preserve DNA evidence, a motion to produce certain evidence, and a motion for investigative services, that also delayed the trial for the same time period. However, the State's arguments can be addressed at the third-stage evidentiary hearing. Also, if necessary, the State can raise its argument concerning the defendant's filing of an alibi defense further contributing to the delay at this hearing. Moreover, if the defendant was entitled to discharge on January 6, 1998, as the defendant contends, then he would have become entitled to discharge before the legislature amended section 103-5(a) of the Code to require a defendant to make an oral or written demand for a trial on the record in order for the delay not to be considered agreed to by a defendant. See 725 ILCS 5/103-5(a) (West 1998). Thus, we find that the trial court erred in dismissing the defendant's amended postconviction petition at the second stage of the postconviction proceedings with regard to this issue.

¶ 33                                E. Right to Testify

¶ 34    The defendant next contends that his amended postconviction petition made a substantial showing that his counsel deprived him of his right to testify at trial. The right of a criminal defendant to testify at his trial is a fundamental constitutional right. *Piper*, 272 Ill. App. 3d at 846. "The denial of a defendant's right to testify can be a constitutional violation in and of itself, since a criminal defendant's prerogative to testify is a fundamental right which only the defendant may

12

waive, and the question of the exercise of that right is not a matter of a strategic or tactical decision best left to trial counsel." *Id.* However, as with many constitutional rights that may be waived, it is incumbent upon defendant to assert his right to testify. *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 65. To preserve the right, a defendant is required to make a contemporaneous assertion of the right. *People v. Knapp*, 2020 IL 124992, ¶ 46. Generally, an attorney's performance will not be found ineffective simply because counsel advised defendant not to testify; instead, counsel will only be found to be ineffective where the evidence indicates that counsel refused to allow defendant to testify. *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009).

¶ 35    Here, in his *pro se* postconviction petition, the defendant asserted that he wanted to testify on his own behalf, but he was not familiar with trial procedure, counsel never discussed his right to testify with him, and he did not know when he would be called to testify. In his amended postconviction petition, he asserted that he wanted to testify on his own behalf, but he did not because counsel never discussed his right to testify with him. Unlike the majority of the cases cited by the State in its appellee brief, there is nothing in this record on appeal indicating that the defendant waived his right to testify, that his counsel discussed this constitutional right with him, or that the trial court admonished him concerning this right before the defense rested. Although the trial court is not required to admonish the defendant about the right to testify, the absence of such admonishments supports the defendant's claims that this was never discussed with him. It would be difficult for a defendant to make a contemporaneous assertion of the right to testify if he was never informed that he had such a right and failure to assert it would result in waiver.

¶ 36    In arguing that the defendant's counsel did in fact talk to the defendant about his right to testify, the State points to a statement that defense counsel made to the trial court after the State rested its case that he was going to have a conference with his client. The State argues that, at this

point in the proceeding, the only decision that defense counsel needed the defendant's permission on was whether the defendant waived his right to testify. However, there is nothing in the record showing that this was the subject of that conversation, and we will not assume that defense counsel informed the defendant about his right to testify and had a conversation about waiving that right based on that one statement.

¶ 37 Thus, we find that the defendant has made a substantial showing that his trial counsel deprived him of his right to testify at trial. Since the trial court dismissed the defendant's amended petition at the second stage of the postconviction proceedings, we are unaware of what the defendant's testimony at his trial might have been and cannot evaluate how that testimony might have impacted the jury. Thus, an evidentiary hearing is necessary to resolve the questions about what occurred at the trial and how the defendant's testimony would have impacted the outcome of his case. Accordingly, we find that the trial court erred in dismissing the defendant's postconviction petition at the second stage of the postconviction proceedings and remand for third-stage proceedings on his claims.

¶ 38                                    III. CONCLUSION

¶ 39 For the foregoing reasons, we reverse the second-stage dismissal of the defendant's amended postconviction petition and remand the cause to the trial court for a third-stage evidentiary hearing on the defendant's petition.

¶ 40 Reversed and remanded.

14